(12 App. Div. 218.)

REMINGTON PAPER CO. v. LONDON ASSUR. CORP. OF ENGLAND.

(Supreme Court, Appellate Division, Fourth Department.    December 19, 1896.)

1. CORPORATIONS—AUTHORITY OF TREASURER—BY-LAWS.

The treasurer of a corporation has authority to submit to arbitration a claim against an insurance company for a loss by fire, where he not only performed all the duties incident to the position of treasurer; but, at the time of making the submission, had, on account of the absence of the president, the entire management of the business, though the by-laws provided that the business should be managed by trustees, and in the immediate charge of the president.

2. SAME—BY-LAWS—PRESUMPTION OF AUTHORITY TO ELECT TREASURER.

It will be presumed that a corporation has by-laws providing for the election of a treasurer, where for years a treasurer has been elected by the same body that makes the by-laws, and has performed the duties of the office.

3. INSURANCE—SUBMISSION TO APPRAISERS—WAIVER OF POLICY REQUIREMENTS.

A provision in a fire insurance policy that the appraisers of a loss shall state in their award the original value of the property, as well as the damage thereto, is waived by a submission to appraisal which only requires a finding of the damage.

4. CORPORATIONS—CONTRACT IN NAME OF PRESIDENT.

An agreement, made pursuant to a fire insurance policy on the property of a corporation, to submit the loss to appraisers, will not be set aside, as not the act of the corporation, merely because it is in the name of the president, where the policy is also in his name, and on the agreement the loss was appraised and the award paid.

5. INSURANCE—PARTIALITY OF APPRAISERS—VACATING AWARD.

An award by appraisers will not be set aside because one of them had been in the employ of the insurance company, where the other was in the employ of the insured, and the two agreed on the loss without calling in an umpire.

6. ARBITRATION AND AWARD—VACATING AWARD—MISTAKE NOT APPARENT.

An award cannot be set aside in equity for a mistake not apparent on its face.

7. SAME—VACATING AWARD—RESTORATION OF BENEFITS.

One who has received the payment under an award cannot sue to vacate the award, and recover on his original claim, without offering in his complaint and on the trial to restore the sum received, unless it is conceded that he will, in any event, be entitled to that amount.

Appeal from special term, Jefferson county.

Action by the Remington Paper Company against the London Assurance Corporation of England to set aside the arbitration of the amount of a loss by fire, and to recover on the policy. From a judgment entered on a decision of the trial judge in favor of defendant, plaintiff appeals. Affirmed.

Action brought to set aside arbitration proceedings, to determine the amount of a loss by fire, and then to recover the amount of such loss. The total insurance upon the property was $6,600. The policy here in question was for $1,650. The fire occurred December 24, 1889. Mr. Dubois, representing the companies, visited the scene of the fire January 4, 1890, and then called at plaintiff's place of business, and met Charles H. Remington, who was known as the treasurer of plaintiff. Mr. Remington professed to have authority to adjust and settle the loss, and therefore some talk was had about the amount of the loss. Some differences of opinion upon this subject appeared to exist, and arbitration under the terms of the policy was agreed to. Mr. Parker was designated as arbitrator by Mr. Remington, and Mr. Langworthy was designated by Mr. Dubois. The written agreement was prepared, and was signed by Mr. Remington, treasurer, and by Cluff and Dubois for the companies, as general agents and adjusters. Thereafter, and January 9, 1890, the two appraisers made their award in writing, stating the total amount of the loss at $4,112.46, one-fourth of which (this defendant's share) would be $1,028.11. Thereafter, and January 14, 1890, Mr. Remington,

treasurer, made and executed the usual proofs of loss, in accordance with the award by the appraisers, and the same were forwarded to and received by the defendant January 15, 1890. Thereafter, and January 23, 1890, the defendant paid the amount claimed in the proofs of loss from it, after discounting the same for the unexpired term of 60 days, to Mr. Caswell, called the "assistant treasurer" to the plaintiff, the amount actually paid being $1,017.84; and he executed and delivered to defendant a receipt in full satisfaction and cancellation of the policy, which was delivered up. At the time of the fire, A. D. Remington, the president of the plaintiff, was in Europe. He returned in February, 1890, and, upon learning what had occurred, was dissatisfied with the amount at which the loss had been adjusted, and for which it had been settled. He had thereafter more or less correspondence, and some interviews, with the manager of the defendant. He insisted upon the whole matter being reopened, but the defendant, while expressing his willingness to correct any mistakes it was satisfied had been made, refused to reopen the matter or have a new appraisal. Nothing came of the correspondence and these negotiations, and finally this action was commenced January 13, 1891. The money paid by the defendant has been retained by the plaintiff, and the money sought is of the full amount insured, $1,650, less the amount paid, $1,017.84, the balance being $632.16. Other facts will appear in considering the legal questions raised in the case.

The opinion of Mr. Justice WILLIAMS, at special term, is as follows:

The plaintiff claims the award was void, and not binding upon plaintiff, because C. H. Remington, as treasurer, had no authority, for the plaintiff, to make the agreement of submission. This claim, however, is hardly tenable. C. H. Remington claimed at the time that he had authority. He had at the time practically the entire management of the business. The president, A. D. Remington, was in Europe. The first vice president, George P. Folts, was in New York, and paid no attention to the business. The second vice president, C. R. Remington, was engaged in conducting his own separate business in another part of the city, and was giving plaintiff's business little or no attention. C. H. Remington was the owner of nearly one-quarter of all the capital stock of the company, was a director, was elected treasurer of the company, and not only acted as such treasurer, performing the duties ordinarily performed by such an officer,—even making notes for the company,—but, in the absence of the president, had practically the whole management of the business. It is said there was no provision in the by-laws, as presented here, for such an officer as a treasurer; neither was there for such an officer as second vice president; and yet these men were elected to such offices, held the same, and performed the duties thereof. The by-laws themselves are made by the same body as the officers are elected by. Although the record may not show by-laws providing for such offices, when men are elected year after year to such offices, and hold the same, and perform their duties, it may be assumed that such offices exist, and that there are such by-laws, though nothing with reference thereto is found in the records produced.

It is said no person had power to act for the plaintiff but the president. The by-laws did provide that the stock, property, and concerns of the company should be managed and conducted by five trustees, duly elected, and that the property and business should be in the immediate charge of the president, who should be responsible for the right management of it to the trustees. It is true, the five trustees were the controlling power, and that the president was primarily charged with the conduct of the business; but I apprehend others—officers or agents, even —could be authorized by the trustees or president to act in their absence. The real question is whether the acts done were fairly within the scope of the authority of the officer or agent acting. Where the powers and duties of officers are not expressly defined by the by-laws or by resolution, such powers and duties may be inferred from the names and nature of the offices held by them. I do not doubt that C. H. Remington was legally what he was represented to be,— treasurer of the company; and considering the nature of such office, and the duties he did perform from day to day, especially in the absence of the president and other officers, I have no doubt he had authority at the time this business was done to do what he did with reference to the arbitration. He did make the agreement of submission. He said he had authority to adjust and settle the case for the company, the insurance companies believed he had authority, and I do

not find that the president, on his return home, made any question as to his (the treasurer's) want of authority to act in the matter, nor do I find in subsequent negotiations or correspondence between the parties any such question discussed as want of authority in the so-called treasurer to do what he had done. The president claimed that, if he had been home, he would not have consented to the award, but would have had it different. He claimed there was mistake or fraud or dishonesty on the part of both or one of the arbitrators, and that the whole thing should be reopened, new appraisers appointed, and a new award made. The plaintiff claims, again, that the agreement of submission was not properly made or executed,—was not the agreement of the plaintiff. In form, it was made between "A. D. Remington, president," and the insurance companies, and not by plaintiff in its corporate name. The insurance was, however, in the same form, and, as I understand, the title to the property was held by and in the name of "A. D. Remington, President." If the agreement was invalid by reason of form, the same reason would render the policies invalid. The signing by the treasurer was informal, also, but I think, he having authority to do the business, informalities must now be regarded as having been waived. Under the agreement, the arbitrators acted,—made their award. It was concurred in, proofs of loss were made in accordance with the award, and the amount of the award was paid by the defendant and received, and has ever since been retained, by the plaintiff. During all the negotiations and correspondence had between the parties prior to this action, no such questions were suggested. In this condition of things, mere informalities must be disregarded, as having been waived by the plaintiff, and can hardly now be urged to invalidate the submission or award. There was sufficient disagreement between Remington and the representatives of the insurance companies with reference to the amount of the loss to authorize the submission. No formal notice was necessary to the meeting or proceedings by the appraisers. Remington, the treasurer, had knowledge of the meeting of the appraisers, and that they were proceeding with their work at the time they were together. It was unnecessary to formally serve a copy of the award upon plaintiff. Remington, the treasurer, evidently had knowledge of its contents before he made and executed the proofs of loss. Whatever the policy may have provided the appraisers should do, I apprehend the parties might waive any provisions in the policy by the form of the submission. I do not find anything in the submission requiring the appraisers, in their award, to state separately "sound value" and "damages." They were, by the submission, required to estimate the cost of replacing, and make a proper reduction for the difference between the property before the fire and the property replaced new. This was to be done in order to arrive at the conclusion as to damage. The award was sufficient in stating the conclusion,—the damage,—without stating the details as to the manner of arriving at such conclusions, inasmuch as the submission did not require such details to be stated in the award. And it may be suggested, further, that there was a waiver of any informality of the award, by accepting it, making the proofs of loss in accordance therewith, and accepting payment of the amount found by the award.

There does not seem to be any claim made in behalf of plaintiff that there was any fraud or dishonesty practiced by the appraisers, or either of them, in making the appraisal, nor any misconduct, unless it may have been carelessness and failure to make sufficient examination and acquire sufficient information as to the building and the damage. It is suggested that Mr. Langworthy was not an impartial appraiser; that he was friendly to the insurance companies, and had been frequently employed by them and by other companies to appraise losses occasioned by fires. I do not quite see how these facts, in and of themselves, would show partiality. Mr. Parker was concededly friendly to the plaintiff, and had not only been employed by the plaintiff, but was at the time of the appraisal in plaintiff's employ. He was quite a competent man, as a carpenter and builder, had been engaged in large contracts, and engaged in building large and expensive buildings. Mr. Langworthy's action as appraiser was so fair and impartial in this matter that Mr. Parker agreed with him as to the appraisal, so that the services of the umpire were not needed or called for. I do not see how, under these circumstances, I can find Mr. Langworthy was not fair and impartial. It is claimed there was great injustice done in the matter, and evidence has been given in behalf of plaintiff to show the loss was very much larger than the amount at which it was appraised. The defendant has

43 N.Y.S.—28

refused to give any evidence on this subject, relying upon the legal proposition that the court cannot afford relief based upon mistakes not appearing upon the face of the award. The correspondence had before the commencement of this action deals more or less with this question. The claim made then, and still made, is that the appraisers were careless, and made mistakes and omissions, in the performance of their labor, and this is very likely true. The fault of the appraisers, however, was contributed to by the plaintiff. The treasurer, Remington, who had charge of the whole business at the time, saw fit to trust the matter of the appraisal to Mr. Parker, who had more or less knowledge of the building, previously acquired. He did not look after the matter himself, as the president, A. D. Remington, would very likely have done if he had been at home. It is always better and safer to look after business yourself, than to trust it too much to others. The only question is whether the court has power to afford relief on account of any mistakes or omissions of the arbitrators in making the appraisal and the award. I have examined the authorities referred to by counsel upon this question, and it seems to be well settled that an award cannot, by a court of equity, be held invalid or set aside for a mere mistake, or alleged mistake, unless such mistake appears upon the face of the award itself. The latest case upon this subject in the court of appeals to which I am referred is Sweet v. Morrison, 116 N. Y. 19, 22 N. E. 276. At page 33, 116 N. Y., and page 280, 22 N. E., the court says: "It is well settled that while an award may be set aside for a palpable mistake of fact, of the nature of a clerical error, such as a miscalculation of figures, still, in general, such mistake, to be available, must appear on the face of the award, or in some paper delivered with it [citing Fudickar v. Insurance Co., 62 N. Y. 392; Morris Run Coal Co. v. Salt Co. of Onondaga, 58 N. Y. 667, and other cases]. The party who seeks to set aside an award upon the ground of mistake must show, from the award itself, that but for the mistake the award would have been different. The merits of an award, however unjust or unreasonable it may be, cannot be reinvestigated, for otherwise the award, instead of being the end of a litigation, would simply be a useless step in its progress. In the absence of proofs of corruption, bad faith, or misconduct on the part of the arbitrator, or palpable mistake appearing on the face of the estimate, neither party can be allowed to prove that he decided wrong as to law or facts [citing Perkins v. Giles, 50 N. Y. 228]." To the same effect is the case of Masury v. Whiton, 111 N. Y. 679, 18 N. E. 638, which cites and follows 50, 58, and 62 N. Y., above referred to. Our own court of appeals having spoken so plainly, and adhered to the same rule for so long a time, it is not essential to examine other authorities. I have, however, examined the text-book and authority referred to by plaintiff's counsel. I do not find any authority in this state to suggest the particular principle referred to in Story's Equity Jurisprudence, that any award may be set aside for a mistake not appearing upon the face of the award, if the arbitrators are satisfied that a mistake has been made, and state it, etc. Indeed, the author does not fortify his statement in the text with very much authority. The case Garvey v. Carey, 35 How. Prac. 282, does not, when carefully read, support the claim of plaintiff. So that the law applicable to this case must be held as stated in the cases in the court of appeals above referred to. That must be the more satisfactory rule. If in every case it might be shown that the arbitrators, in fixing the amount of damages, omitted to consider some elements of damage, then the arbitration would rarely be final, or avoid a subsequent controversy over the question. We should have to litigate the whole matter anew, take evidence as to the details, and the award would rarely be what it should be,—final and decisive.

I do not think the court has the power in this case, under the evidence, to set aside this award for the mistakes or omissions alleged to have been made by the arbitrators. It seems to me, moreover, there is difficulty in having the award set aside upon the pleadings as they now stand, because no offer to restore the money paid was made in the pleadings or on the trial. It was not necessary to tender the money before bringing the suit, because the plaintiff did not proceed upon the theory that the award had been rescinded or set aside. The action was brought for a rescission of the award, and to procure it to be set aside;· and in such case it is only necessary, in the pleadings, to offer to restore, and to make the same offer on the trial. Berry v. Insurance Co., 132 N. Y. 55, 30 N. E. 254; Vail v. Reynolds, 118 N. Y. 302, 23 N. E. 301. Such a course must be taken in all cases brought for a rescission of a contract (and the same is true of an action to set aside an award made under an agreement of submission), with a single exception, and that

is where concededly the plaintiff is entitled, in any event, to all that has been received. Allerton v. Allerton, 50 N. Y. 670; Gould v. Bank, 86 N. Y. 81; Tallinger v. Mandeville, 113 N. Y. 433, 21 N. E. 125; Kley v. Healy, 127 N. Y. 561, 28 N. E. 593. While the present action was brought, not alone to have the award set aside, but also to recover for the loss, yet the award stands in the way of any recovery whatever, and must be set aside before any other relief can be had in the action.

It is claimed in behalf of plaintiff that there was, concededly, damage to the amount paid, to which plaintiff is entitled, whatever the result of the action may be. If the action fails, then the plaintiff, of course, is entitled to what has been received; but, if the action is sustained so far as to set aside the award, then the amount of damages would be open to litigation. The defendant has never admitted that the damage was at least the amount awarded. It abided by the award, and paid because of the award. It has refused to go into proof of loss here because it claimed there was no power in the court to compel it to litigate that question in this action. While, if litigated, it would be very likely found the amount of loss was really as large as found by the award, still in no sense could it be said the defendant conceded the loss was as large as awarded. If compelled to litigate, it had a right to be just where it was before the arbitration and award was made, and then to litigate the question anew, and reduce the amount below that awarded, if it could. This being so, the rule is applicable—and this case is not an exception—that the plaintiff, in the pleadings, must offer to restore, and repeat the offer on the trial. Here the plaintiff has not proceeded upon this theory. It has persisted in keeping what it has received, and asks for more, upon the basis of setting aside the award. I hardly think such relief permissible, under such pleadings, and in view of such trial. There is very likely power to relieve plaintiff from this difficulty, if desired, upon terms of amendment of pleadings, and an offer to restore, as a part of the trial.

It seems to me there is difficulty, also, in the way of plaintiff's maintaining this action by reason of the time allowed to elapse before the action was begun. I do not, however, deem it necessary to examine this question very closely, considering the conclusion to which I have arrived upon the other questions in the case. I am of the opinion the action cannot be maintained, and must order judgment dismissing the complaint, with costs. Formal decision may be prepared and agreed upon as to form, by counsel, and submitted to me for signature.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

L. J. Dorwin and W. M. Rogers, for appellant.
A. H. Sawyer, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of WILLIAMS, J., delivered at the trial.