### BATES v. PENNSYLVANIA RD CO

Ohio Appeals, 2nd Dist, Franklin Co

No 2761. Decided Dec 30, 1937

Harry Kohn, Columbus, and James B. Yaw, Columbus, for plaintiff-appellant.

Henderson, Burr, Randall & Porter, by Lawrence D. Stanley, Columbus, for defendant-appellee.

### OPINION

By HORNBECK, J.

This was an action for money only, which after issue drawn came on for trial to a court and jury, whereupon, at the conclusion of the plaintiff's case, the trial judge directed the jury to return a verdict for the defendant. On the verdict thus returned,

after motion for new trial was filed, submitted and overruled, judgment was entered for the defendant. An appeal on questions of law is prosecuted from the judgment. The assignment of errors challenges the action of the trial court in directing a verdict for the defendant. This is the one and only question presented.

The cause of action instituted by Essie G. Bates, guardian of Lloyd V. Bates, was predicated upon a claim of Lloyd V. Bates for relief because of disability incurred while a member of the Voluntary Relief Association of defendant company. Lloyd V. Bates, who was a doctor and who hereinafter will be referred to as Doctor Bates, was, on and after December 1, 1922, employed in the Medical Department of the defendant company and while so employed voluntarily became a member of the Relief Department of the defendant company. By the regulations of said Relief Department the defendant promised that in event of disability of a contributing member of the class to which Doctor Bates belonged the defendant would pay to the member the sum of $2.50 per day for a period of not longer than fifty-two weeks and thereafter, during the continuance of disability the sum of $1.25 per day.

The petition avers, and there is no denial, that Doctor Bates performed all the conditions by him to be performed under the regulations of the Relief Department. It is averred and not denied that on February 24, 1928, Doctor Bates, while in the employ of defendant, became entirely disabled for the performance of any work or labor and it is further averred in the petition that this disability continued from the aforesaid date until the date of the filing of the petition. It is averred and admitted that the defendant paid to Doctor Bates the benefits accruing to him by reason of membership in the Relief Department of defendant company up to and including January 31, 1931, and it is averred that the defendant has failed, neglected and refused to pay the plaintiff the payments due and owing thereafter from said date to the date of the filing of the petition.

The answer of defendant company consists of a general denial of the averments of the petition, save admissions as to the representative capacity of plaintiff guardian; the corporate capacity of defendant company; the employment of Doctor Bates by defendant company; his membership in the Voluntary Relief Association; his reported disability on June 1, 1928, diagnosed as psychoneurasthenia; payment of benefits as a member of said Relief Department to January 31, 1931, and sets out nine numbered averments, which in substance are: that on January 31, 1931, Dr. Bates was examined by the Medical Department of said Relief Department, reported recovered and able for duty; again examined on April 8, 1931, by Dr. R. C. Kell, a neurologist connected with said Relief Department, again pronounced fit for work but neither Doctor Bates nor his guardian complained or appealed from the decision of the Superintendent of said Relief Department terminating the payment of relief benefits, except as afterwards stated; that Doctor Bates in his application for membership in the Voluntary Relief Department of defendant company agreed specifically to abide by Rule 64 of the Relief Department, which rule is hereinafter set forth; that Regulation 45 of the Rules and Regulations of said Relief Department provides:

"* * * If the injury is of a permanent character benefits will cease when the member shall be declared by the Medical Examiner as able to earn a livelihood in an employment suited to his capacity.

"Disablement from accident occurring otherwise than as aforesaid, including such as may arise at any time from acts or things having no proper relation to the performance of duty, or from individual physical condition, or tendency, shall be classed as sickness, and if of a permanent character benefits will cease when the member shall be declared by the Medical Examiner as able to earn a livelihood in an employment suited to his capacity."

That in September, 1934, Essie G. Bates, guardian of Lloyd V. Bates, made formal demand to the Relief Department for benefits, which demand was disallowed by the Superintendent of said Voluntary Relief Association; that subsequent to this disallowance of the claim, the guardian attempted to appeal to the Advisory Committee of the Voluntary Relief Department from the decision of the Superintendent; that such appeal was not taken within thirty days from the denial of said claim by the Superintendent, as required by Regulation 64, which provides:

"All questions or controversies of whatsoever character arising in any manner, or between any parties or persons in connection with the Relief Department, or the operation thereof, whether as to the construction of language or meaning of the

Regulations of the Relief Department, or as to any writing, decision, instruction or acts in connection therewith, shall be submitted to the determination of the Superintendent, whose decision shall be final and conclusive thereof, subject to the right of appeal to the Advisory Committee within thirty days after notice to the parties interested, of the decision.

"When an appeal is taken to the Advisory Committee it shall be heard by said Committee without further notice at their next stated meeting, or at such future meeting or time as they may designate, upon evidence and argument submitted in writing, and shall be determined by vote of the majority of a quorum, or of any other number not less than a quorum of the members present at such meeting, and the decision arrived at thereon by the Advisory Committee shall be final and conclusive upon all parties without exception or appeal."

That:
· "The decision of the Superintendent in 1931 terminating benefits became final at the expiration of thirty days therefrom, when neither the said Lloyd V. Bates or Essie G. Bates, as his guardian, appealed from said decision. If said decision was not final, then the decision of said Superintendent in September, 1934, disallowing the claim of Essie G. Bates, as guardian, for benefits became final, when within thirty days therefrom neither Lloyd V. Bates or Essie G. Bates, as his guardian, appealed therefrom. In any event, the decision of the Advisory Committee was final, conclusive and binding upon the parties."

The plaintiff, replying to the answer, avers:
"that full compliance on behalf of the plaintiff was had with the requirements of the rules and regulations of the defendant and that if there was any variation therein the same. was waived by the defendant, which by its Advisory Committee finally considered the claim of plaintiff and denied the same."

Plaintiff further avers that:
"the rulings, findings and decisions of the defendant were fraudulent and collusive and were manifestly mistaken and constituted an abuse of discretion in that at all of the times averred since the 24th day of February, 1928, the said Lloyd V. Bates was and is now suffering from a mental sickness known as dementia praecox; that the same was notoriously known

to all persons with whom the said Lloyd V. Bates came into contact and was apparent to the agents of the defendant and said medical examiners, superintendent and Advisory Committee; that the declaration and finding of the said medical examiner, the determination of said superintendent and of the said Advisory Committee were fraudulent, collusive, manifestly mistaken and constituted an abuse of discretion in that at no time since February 24, 1928, nor now is said Lloyd V. Bates recovered, able to be on duty or to perform any manual or mental labor of any nature or description and since said date he continued to be and was wholly and totally disabled; that notwithstanding said condition of demential praecox and said physical condition of the said Lloyd V. Bates and the defendant's agents informed knowledge thereof, the said agents of the defendant arbitrarily and with a purpose and intent to defraud plaintiff of his right to continue to participate in said relief fund covinously and collusively declared and certified the recovery and ability of plaintiff to work and because of such false declarations and certificates said examiners, superintendent and Advisory Committee of the Relief and Pension Department caused plaintiff's further participation in the said relief fund to be discontinued from and after January 31, 1931."

We have set out the averments of the answer and reply at considerable length, so that the issues presented may be well defined. The answer did not admit that any appeal from the finding of the Superintendent against Doctor Bates' claim was made to the Advisory Committee of the Relief Department but urged that the appeal failed because it had not been prosecuted within the time prescribed by the rules and regulations but did aver that any decision of the Advisory Committee was final, conclusive and binding upon the parties.

The reply asserts the observation by the plaintiff of all of the provisions of the rules and by-laws of the Relief Department which, with reference to the claim of Doctor Bates, required, when it was denied by the Superintendent of the Relief Department, that if an appeal be taken from such action to the Advisory Committee, it was to be prosecuted within thirty days after denial, which appeal was to be presented to the Advisory Committee upon evidence and argument submitted in writing.

The reply further avers that if there was any variation in the observance of the requirements of the rules and regulations of the Relief Department it was waived by the defendant, but asserts, finally, that the Advisory Committee did consider the claim of plaintiff on the appeal and denied it.

The cause went to trial upon the claim of the plaintiff that the Superintendent had improperly denied the claim of Doctor Bates by his guardian; that upon appeal it had fraudulently and in manifest mistake supported the finding of the Superintendent.

Upon the trial the evidence was directed to a full history of the mental disease with which it was claimed Doctor Bates was afflicted and as to his ability to engage in gainful employment at the time he was cut off of benefits on January 31, 1931. The trial judge, in directing the verdict, found that there was no evidence to support the claim of fraud on the part of the Superintendent or the Advisory Board of the Relief Department on the appeal and, further, that the proof failed to disclose any manifest mistake, as is defined in law, in the action taken by the Superintendent on the claim of Doctor Bates or by the Advisory Board on the appeal from the action of the Superintendent.

In this court it is claimed but not urged that the trial court erred in taking the case from the jury upon the averments of fraud against the Relief Department. The argument is directed to the assigned error in refusing to submit the cause to the jury upon the averments of manifest mistake in the action on the claim by the Superintendent and upon the appeal by the Advisory Board.

In the trial court and here the plaintiff has at all times proceeded upon the theory that all requirements to be performed on behalf of Doctor Bates under the rules and regulations of the Relief Department had been observed and that not only was his original claim acted upon by the Superintendent, but that he was also accorded the right of appeal.

The conclusions which we reach respecting the mental condition of Doctor Bates are predicated upon the evidence in this record and not upon that which may have been before the Superintendent or the Advisory Board on appeal. It is indeed doubtful if much of the testimony in the record was admissible upon any other theory than that of fraud or after the admission of the evidence which was before the Advisory Board, but inasmuch as the trial court did

not know what would develop as the cause progressed, it was only proper that the testimony be accepted. Therefore, it should be understood that we ground the majority opinion in this case, first, upon the proposition that it was obligatory upon the plaintiff to present to the attention of the jury that which was before the Advisory Board on appeal respecting the claim of Doctor Bates for benefits by reason of his membership in the Relief Department. Unless and until at least the substance of all that was before the Advisory Board on appeal was before the jury, it could not properly say whether or not the action taken by the representatives of the Relief Department was the result of manifest mistake.

It is probable that the waiver which the plaintiff pleads in the reply refers to a waiver of strict compliance of observance of the rule as to time within which the appeal should have been perfected from the action of the Superintendent to the Advisory Board. It might possibly also reach the failure of the Advisory Board to insist upon the provision in the rules that the appeal should be prosecuted upon evidence and argument submitted in writing but in no event upon the status of the plaintiff under the pleadings could the obligation of the plaintiff to fully present to the jury all that was brought to the attention of the Advisory Board on appeal be waived. It was essential to a determination by the jury of the principal controverted fact, namely, that the Advisory Board had made a manifest mistake in finding against instead of for Doctor Bates' claim, that everything of substance which was before the Board should likewise be presented to the jury. Otherwise, it is obvious that no proper determination of this controverted question could have been made.

We must at all times keep in mind that the controlling question was not only, what was Doctor Bates' mental condition, not of the date of his appeal, April 23, 1935, but of the date that he was cut off from his benefits, namely, January 31, 1931, but further, whether or not, upon the information before the Advisory Board on appeal, it acted in manifest mistake in its determination.

The record is incomplete as to what was before the Advisory Board. Indeed, it may be doubted if the plaintiff had such an appeal as is provided in the regulation. The Advisory Board designated a sub-committee, known as a Committee on Appeals, which committee came to Columbus and request-

ed Mrs. Bates to come to the Chittenden Hotel for an interview. What transpired at this meeting, what statements were taken and if any, whether in writing or whether transmitted to or considered by the Advisory Board as evidence, can not be determined. From the testimony of Mr. Norrie, a member of the Committee on Appeals. it may be inferred that the reports of Doctors Heston, Kell and Harding were before the Advisory Board. True, Mr. Huntzinger, head clerk of the Relief Department, testified that the "Advisory Committee had the entire facts read to them at their meeting by the chairman of the Committee on Appeals." But this is but a conclusion of the witness to the effect that the entire facts were before the Board, and of what they consisted does not appear, nor is there any showing that the plaintiff had any knowledge or control of what went before the Advisory Board in behalf of Doctor Bates on his appeal, although it is stated by Mr. Norrie that she had opportunity to present anything she cared to offer. It seems obvious that until and unless the subject matter upon which the Advisory Board acted denying the appeal was before the jury, it had no basis for a finding of manifest mistake on the part of the board in reaching its conclusion.

In fairness to the plaintiff it should be said that in our judgment, upon the record as it comes to us, it is established that Doctor Bates was at all times on and after February 24, 1928, until the date of trial, an insane person, suffering from dementia praecox, paranoiac type, and that at all times during said period he was unable to earn a livelihood in any employment suited to his capacity.

If it appeared in the record that the facts which are brought to our attention had been presented in their entirety or substantially so, to the Relief Department of defendant company or to the Advisory Committee on appeal from the decision of the Superintendent and either or both had determined that Doctor Bates was able, on January 31, 1931, to return to a gainful employment, we would unhesitatingly hold that it was clearly a jury question if they had acted under manifest mistake in their determination.

It is not necessary to set forth at length the facts upon which we predicate our conclusion. Suffice to say that the record is convincing as it is now presented to us that Doctor Bates was at all times, from February, 1928, when he was committed to the McMillen Sanitarium until the testi-

mony was taken in the Common Pleas Court, a hopelessly and incurably insane person and to have permitted him to engage in his profession or in any other line of employment would have been cruel to him and a hazard to the public.

But as we conceive the test of manifest mistake which may be charged to the defendant, it must relate to the factual situation which was presented to the Relief Department or to the Advisory Committee on appeal. The record will not permit the conclusion that upon the case as presented, either to the Superintendent or to the Advisory Committee, they were manifestly mistaken in the determination which they made. On the contrary, it would seem that the action taken, though in our opinion a mistake, was but an error of judgment which was permissible under such meager facts as appear to have been before them. This is the second and minor proposition upon which we base our decision.

Dr. Herman E. Heston, a general practitioner, with the company, had opportunity to study Doctor Bates' case at close range and diagnosed his affliction as psychoneurasthenia and Dr. Ralph C. Kell of Philadelphia, a neurologist and psychiatrist for the defendant company, whose examination was limited and based in probability upon an imperfect history of Doctor Bates' condition, corroborated Doctor Heston's diagnosis. The reason for the difference between the doctors for the defendant and those who testified for the plaintiff is found in the absence of showing that the delusions and hallucinations from which Doctor Bates at all times suffered and which demonstrated the disease, dementia praecox, were brought to the attention of the doctors for the defendant company. They admit as much.

The ability of patients suffering with dementia praecox to mislead the casual observer is well illustrated in part of an answer of Doctor Harding at page 65 of the record:

"While they may, if just put into a very limited environment without worry. without strain, sit around and look normal, we know from experience, and my experience with at least five hundred of these cases entitles me to an opinion on that score, and we know that those crazy ideas are there, even though they aren't manifest to the layman. You could talk to them every day, pass your neighbor on the porch, speak to him and there would not be a single sign of his mental illness, but his mind is destroyed and

if you talk to him long enough or upon his particular weak spot he would show that he was sick."

It seems that Doctor Bates also misled the expert for the company.

When the Advisory Committee elected to consider the appeal from the decision of the Superintendent cutting Doctor Bates off relief it waived any in‑ firmity in the procedural step as to time within which the appeal should have been perfected. This was safe procedure because of the possibility that defendant was dealing with an insane person who, up until about the time that the appeal was undertaken, had no legal representative. However, when the Advisory Committee consented to hear the appeal the obligation was definitely put upon the guardian by the rules and by-laws of the Relief Association to present all of the facts tending to support the claim that the action of the Superintendent should be revoked. This record will not bear the interpretation that all the facts which are now before us were presented to the Advisory Committee and without such showing we can not say that the plaintiff has sustained the burden which she is required to carry in this action to take her case to a jury.

There is no controversy between the parties as to the law controlling this case It was announced in a comparatively recent opinion by Barnes, P.J., this court, **Shipe v N. & W. Ry. Co., 8 Ohio Bull. 39**, wherein the obligation of a claimant against the Relief Department of the N. & W. Ry. Co. was under consideration. It was there held that the finding of the officers of the Re- lief Association against a claimant was conclusive un- less induced by fraud, collusion, manifest mistake or abuse of discretion.

Manifest mistake has been defined by the courts. The elements essential to con- stitute manifest mistake are set forth in **Pfleger v Reuner, et, 13 Oh Ap 96**, from which quotation was made by the trial court at the time of ruling upon the motion for directed verdict:

" 'To induce the court to interfere, there must be something more than error of judgment such as corruption in the arbitrator, or gross mistake, either apparent on the face of the award, or to be made out by evidence; but in the case of mis-

take, it must be made out to the satisfaction of the arbitrator, and that if it had not happened, he should have made a different award'."

And in 5 C.J. 180:

"When it is sought to set aside an award upon the ground of a mistake committed by arbitrators, it is not sufficient to show that they came to a conclusion of fact erroneously, however clearly it may be demonstrated that the inference drawn by them was wrong. It must be shown that by some error, they were so misled or deceived that they did not apply the rules which they intended to apply to the decision of the case, so that upon their own theory a mistake was made which has caused the result to be something different from that which they had reached by their reason and judgment."

Citing cases from several states.

The rule is stated with clarity in Patriotic Order, etc., v Hartford Fire Insurance Co. (Pa.), 78 A.L.R. 902,

"An award of arbitrators * * * can not be set aside except for actual fraud or deception, or for a mistake on the part of the appraisers which is not a mere mistake of judgment."

The rules and by-laws of the Voluntary Relief Department to which Dr. Bates subscribed when he took membership therein, expressly committed him to abide by the provisions of Regulation 64, heretofore set forth.

In the light of Regulation 64 and upon the showing as to the evidence which was before the Superintendent or the Advisory Committee on appeal the jury could not say that they or either of them are chargeable with manifest mistake in the denial to Doctor Bates of his right to continue to receive relief as a member of the Voluntary Relief Department.

It is our opinion that Doctor Bates should have been entitled to continuing relief had the Superintendent and the Advisory Committee realized the true factual situation respecting his illness, but in failing to accord him that right to which he was entitled they did not commit such a breach against his legal rights as will permit a jury on the record before us to set aside their action. In this situation the trial court took the proper action in sustaining the motion of defendant, for a directed

verdict and in overruling the plaintiff's motion for a new trial.

The judgment will be affirmed.

BARNES, PJ, concurs.

## DISSENTING OPINION

By GEIGER, J.

I find myself unable to agree with my associates. The opinion of the majority discloses a searching analysis of the issues made in this case, and it might be permissible to briefly state some of the conclusions of the majority, with which I am in full accord.

The judge writing the opinion for the majority says in substance that, in our judgment, upon the record as it comes before us, it is established that Bates was at all times after February 24, 1928, until the date of the trial an insane person and at all times during said period he was unable to earn a livelihood. It is further stated that had the facts, which are brought to our attention, been presented in their entirety to the Superintendent or the Advisory Committee on appeal and had either or both determined that Bates was able, on the date in question, to return to gainful occupation, we would unhesitatingly hold that they had acted under manifest mistake and that the record is convincing, as it is now presented, that Doctor Bates was at all the times in question until the testimony was taken in Common Pleas Court, a hopelessly, incurably insane person and to have permitted him to engage in his profession would have been cruel to him and a hazard to the public.

## WAS THERE A MANIFEST MISTAKE?

The initial act which ultimately ripened into a loss to Doctor Bates of his sick benefits was that of the Superintendent based on the report of examining physicians. Wheher a mistake was made by the physicians, the Superintendent or Advisory Committee, based upon a mistaken diagnosis of the doctors, presents an issue which I believe is made by the pleadings and should have been submitted to the jury.

The trial court, on page 54 of the record, clearly states the issue as follows:

"The first question in the case is whether or not the officials of the railroad company and their doctors were correct in their statement that he had recovered, in 1931, and that they therefore have the right to cut him off the relief. Now, if you pass that point, it is true you have to prove that condition from then on if he isn't recovered—perhaps he is recovered now."

If this is a correct statement, as I believe it is, then any evidence that bore upon the point was competent and should have been submitted to the jury under proper instruction.

## THE LAW

I do not believe that Shipe v Norfolk & W. R. R. Co., 51 Oh Ap 361 (20 Abs 264), while relating to a case having many elements in common with this, is dispositive of the case at bar. The question there seems to have been whether a certain communication was a sufficient appeal to the Advisory Committee, and the finality of the determination of that committee.

The second syllabus, written by a reporter, states:

"In absence of fraud on gross abuse of discretion, the decision of the body is final and a member has no right to have factual questions reviewed by a jury."

A syllabus concededly written by a court reporter is not a statement of the court. I think the reporter inadvertently omitted "manifest mistake" as one of the matters that may be considered by the jury in a proper action. The correct rule appears on page 371 in the language of the court "unless impeached by fraud or manifest mistake." All the authorities to which I have had access so state the rule.

The action in the Shipe case was based not on an allegation of fraud or gross mistake, but upon the principle declared in B. & O. R. R. Co. v Shankard, 56 Oh St 224, wherein it was held "that after the rejection of a valid claim by the Advisory Committee, the beneficiary could maintain an action in the court for the recovery of the money due thereon, and that such rule is not a bar to the action."

This court went to some length in determining that this syllabus was not justified by the facts there at issue, and did not control. That the Shipe case did not involve the issue of mistake clearly appears from the fact that after the trial plaintiff sought to present the issue of fraud and mistake. His application to do this was denied by the trial court, in which it was sustained by this court for the reasons stated. Manifest mistake was never an issue.

The rule may be found well stated in

appellee's brief. **Pfleger v Renner et, 13 Oh Ap 96,** is quoted in the brief as follows:

"In order to warrant a court in setting aside an award of an arbitrator on the ground of manifest mistake, it must appear that there is a mistake of such a character that the arbitrator would have corrected it himself had it been called to his attention."

**In 3 O. Jur., §45, at page 106 and 107,** it is stated:

"To warrant a court in setting aside an award on the ground of manifest mistake, it must appear that there is a mistake of such character that the arbitrator, had it been called to his attention, would have corrected it himself."

In **Burchnell v Marsh et, 58 U. S. 344,** the Supreme Court quotes from an English case, Knox v Symmonds, 30 Eng. Rep. 390, as follows:

"To induce the court to interfere, there must be something more than error of judgment, such as corruption in the arbitrator, or gross mistake, either apparent on the face of the award, **or to be made out by evidence;** but in case of mistake, it must be made out to the satisfaction of the arbitrator, and that if it had not happened, he should have made a different award."

In the case of **Corrigan v Rockefeller, 67 Oh St 354,** it is held:

"Such award **in the absence of fraud and of such manifest mistake as naturally marks a fraud,** is binding upon the parties and entitles the successful party to judgment thereon."

At page 367-368, it is stated:

"And so the rule is that it can not be impeached for error; nothing but fraud, in the parties or in the arbitrators, or such manifest mistake as naturally works a fraud, can be alleged to avoid it."

5 C.J. 190, quoted by the majority is a correct statement of the law, but I think the majority has failed to correctly apply it. I venture that the rule is well established that an award may be set aside in a court upon the proof by the evidence submitted, that in arriving at the decision the arbitrators acted under a "manifest mistake," but that the mistake must be of such character that the arbitrator, had it been called to his attention would have corrected it himself.

This brings us to a consideration of the evidence offered in this case to prove that the arbitrators did, as a matter of fact, make a mistake, and that such mistake was of such a character that had it been called to his attention he would have corrected it himself.

The whole proceeding which resulted in Doctor Bates being removed from the pension roll had its inception in the report of examining physicians representing the pension fund. There can be no question but that these physicians were mistaken because the whole evidence offered by plaintiff's witnesses, including three reputable physicians, indicated that Doctor Bates was insane on the date when the railroad doctors found that he was not.

It may be observed that the testimony of these company doctors gave evidence of their desire to support their own report in reference to the doctor's condition, which was based upon a very limited examination, and such that if the doctor was as a matter of fact suffering with the character of insanity that Doctor Harding testified to, his condition would not have been disclosed by a short or cursory examination.

Doctor Harding, in his testimony, shows how suddenly the deportment of one afflicted as was Doctor Bates, may change, and that such a person may at times appear normal, while as a matter of fact he is a victim of an incurable malady.

Doctor Herman E. Heston testified, beginning on page 86, as to the examination he made of Doctor Bates, and states that in his judgment in April, 1931, when he examined him, he was sane. Testifying at large on page 90, as to his examination, he finishes his statement with the assertion, "that was about the extent of the examination I gave him."

Under cross-examination, in answer to a hypothetical question, the Doctor said, on page 102:

"Q. Would that (the conditions recited) affect your judgment as to his condition in 1931?

A. Not at all."

Other assertions by him appear in the record, that Doctor Bates was sane in 1931, at the time this Doctor was examining him, but on page 114 the question was asked after recitation by counsel of conditions that had been disclosed by other evidence:

"Q. Even if he had these hallucinations or delusions you would still say that the man was sane?

A. No, if I knew he had those halucinations and delusions I would not consider him sane."

Testimony of Doctor Ralph C. Kell begins at page 133, and without going into detail, it may be pointed out that he said on page 145, after being inquired as to whether or not the peculiar conduct of the patient would have changed his opinion: "Not at all.". On the same page he again answered to the query:

"Q. That wouldn't affect your judgment at all as to his sanity or insanity?

A. Certainly not.

Q. Would you regard him in the light of those things as sane or insane?

A. If I had seen him at that particular time, of course, that would have have had some significance."

After denying several times, on page 146, that his opinion would be affected, he stated on page 147, in answer to a hypothetical question:

"Well, if I—if he had told me any of those things, naturally my opinion would have been different, but in the time that I talked to him there was nothing expressed that led me to believe that he didn't have full possession of his mental faculties.

Q. If he had told you those things then and there, you say your opinion would have been different, what do you mean, that your opinion is he is insane and unable to earn a livelihood?

A. I would think then that he had not fully recovered."

It seems to me that the admissions of the doctors under cross-examination that had they been in possession of the full and apparently undisputed facts in relation to the doctor's mental condition at the time they made their diagnosis, they would have been of a different opinion than they expressed in their report, which became the basis of the final judgment of the Advisory Committee. These admissions, in my judgment, fall within the rule that to warrant a court in setting aside an award on the ground of "manifest mistake" it must appear that there is a mistake of such character that the arbitrator had it been called to his attention would have corrected it himself; and within the rule laid down in Knox v Simmons, supra, quoted by the United States Supreme Court to the effect that there must be something more than error of judgment, either apparent on the

face of the award, or to be made out by evidence, "but in case of mistake it must be made out to the satisfaction of the arbitrator and that if it had not happened he would have made a different award."

We must assume that the doctors for the Railroad Company are honest, although naturally inclined to favor the Railroad, and therefore that if the evidence had been presented to them at the time they made their initial report, as to the actual condition of Doctor Bates, they would have arrived at a different conclusion, as finally admitted by them on the stand.

The evidence in the record was all admitted without objection, and much was to the issue as to whether or not the arbitrators had made a manifest mistake. We do not pass upon the weight of this evidence, but my position is that it should have been submitted to the jury under proper instructions.

It must be conceded, and it is so held by the majority, that the evidence before the jury established a manifest mistake. The court directed a verdict in favor of the defendant for reasons given in his charge. This act was equivalent to saying that in spite of the evidence demonstrating a mistake, there was in fact no mistake, at least none which would justify the submission of the evidence to the jury.

I am of the opinion that the court was in error in directing a verdict. His action in doing this does not harmonize with his correct statement, made on page 54, and here again repeated in part:

"The first question in the case is whether or not the officials of the railroad and doctors were correct in their statement that he had not recovered in 1931, and that they therefore had the right to cut him off the relief."

If that was the first question, clearly it should have been submitted to the jury, and to hold as the trial court and the majority do is to say no matter how flagrant a mistake and how clear the proof may be that it has been made, and how conclusive the admissions by the arbitrators may be that had they known the true facts they would not have determined as they did, yet no successful attack can be made upon a manifest erroneous decision. The majority takes the position that no mistake can be shown unless all the facts establish-

ing such mistake had been before the Superintendent and by appeal before the Advisory Board; that no finding of the Advisory Board could be found to be a mistake unless it be determined that the Advisory Board was manifestly mistaken in its conclusions drawn from the evidence before it, unaided by other evidence presented at the trial.

In substance they apply the rule imposed by statute in Industrial Commission cases, that only the evidence presented before the Commission, on re-hearing, can be submitted to the jury, on the issue as to whether or not the Commission made a mistake in denying compensation.

No such rule applies to arbitration cases. It is said in Knox v Simmons, supra, quoted by the U. S. Supreme Court in Bucknell v Marsh, supra, "gross mistake, either apparent on the face of the award **or to be made out by evidence.**"

The last quotation by the majority from 5 C.J. 180, can leave no other inference than that the mistake can be shown by evidence not before the Advisory Board. Some error must be shown by which they were misled or deceived so that on their own theory a mistake was made which caused a result to be different from that which they had reached by their reason and judgment.

How could such error be shown unless by evidence not before them when they made their decision? If new evidence could not be disclosed nothing could be accomplished except a re-argument of the same facts they had already considered and decided.

This would be quite different from a new hearing before a jury, in Industrial Commission cases, limited to the evidence produced before the Commission and also in harmony with the general principles laid down in B. & O. R. R. v Shankard, supra, and not out of harmony with Corrigan v Rockefeller, supra.

As before stated, I must dissent.

I do not wish to be understood as in any way criticizing the doctors or officers of the Relief Association. They showed fairness and even generosity in permitting an appeal long after the same could have been demanded as a matter of right. I believe they now want to do justice to the Doctor, but their duty to the company, and to the other members of the Association,

naturally prompts them to present the defense as they have.