Carmine PESCA, Plaintiff,

v.

**BOARD OF TRUSTEES, MASON TENDERS' DISTRICT COUNCIL PENSION FUND, Defendant.**

No. 97 Civ. 3541 LAK.

United States District Court,
S.D. New York.

Nov. 3, 1997.

Solomon M. Lowenbraun, New York City, NY, for Plaintiff.

Myron D. Rumeld, Proskauer Rose, L.L.P., New York City, NY, for Defendant.

### MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff Carmine Pesca was a construction worker disabled as a result of an injury sustained on October 28, 1989. His claim for union disability benefits was denied in 1994 by the defendant (the "Fund") on the ground that plaintiff did not meet the requirements for coverage. Mr. Pesca then sued the Fund under the Employee Retirement Income Security Act to recover the claimed benefits and other relief, but the Court granted the Fund's motion for summary judgment dismissing the complaint.[1] More than two years later, Pesca brought this action to set aside the judgment in *Pesca I* on the ground that the prior judgment was procured by fraud and on the basis of additional evidence which, he claims, was newly discovered. The Fund moves for summary judgment dismissing the action.

### Facts

*Pesca I*

The facts concerning Mr. Pesca's claim and its disposition are set forth in the Court's opinion in *Pesca I*, familiarity with which is assumed. To summarize the essential points briefly the relevant Fund benefit plan made eligible for disability benefits only those members with eight years of credited service. According to the records produced in the litigation, Mr. Pesca had only seven years of credited service because he did not work sufficient hours to earn service credit for the year 1982, the first year of his employment.[2] Mr. Pesca did not dispute the Fund's records of the hours credited to him in 1982. He instead sought to overturn the Fund's decision by contending that (i) the denial of benefits was arbitrary and capricious in view of the fact that he had worked more than the minimum of 4,800 hours over eight years although he had not worked the requisite 600 hours in each of the eight years, (ii) the Fund improperly decided his appeal at a meeting of which Mr. Pesca had no notice, and (iii) Mr. Pesca's appeal was presented to the Fund trustees by an independent actuarial consultant. Finding no merit in any of these assertions, the Court granted summary judgment in favor of the Fund.

*Subsequent Events*

More than a year after the decision in *Pesca I*, the Fund provided Mr. Pesca with

---

1. *Pesca v. Bd. of Trustees, Mason Tenders' Dist. Council Pension Fund*, 879 F.Supp. 23 (S.D.N.Y. 1995) ("*Pesca I*").

2. *Pesca I*, 879 F.Supp. at 24.

copies of annuity statements from its archives which set forth his detailed employment history and the employer contributions made on his behalf. These revealed, among other things, that Mr. Pesca had been employed with the George A. Fuller Company ("Fuller") in November and December 1982.

Mr. Pesca then requested that the Fund reverse its prior ruling denying him benefits because, he contended, the Fund had not credited him with additional hours he claimed that he had worked for Fuller in the summer of 1982. Mr. Pesca asserted that the hours in question were credited to his stepfather's brother, Frank Cannella, and submitted a statement of a co-worker which claimed that Mr. Pesca had worked at least 600 hours in the summer of 1982 for Fuller.

The Fund responded on September 19, 1996. It declined to reverse its prior determination based on the information provided although it offered to consider evidence of the claimed employment in the form of (i) copies of canceled paychecks, or (ii) relevant Social Security earnings records. It further advised that any such documentation should be submitted in connection with a request for review of the denied claim.

In March 1997, Mr. Pesca's counsel presented his argument before a regular meeting of the Fund's board. He maintained that he believed that the Fund had suppressed information—specifically, a list of employers for whom Mr. Pesca had worked—during *Pesca I* so that Mr. Pesca would not realize that he had not received credit for all of his hours of work in 1982. The Fund's counsel responded that the trustees could not grant the appeal without some documentation, such as pay stubs or Social Security earnings statements, establishing that Mr. Pesca had worked the claimed hours. He suggested that Mr. Pesca contact the Social Security Administration and provided him with the necessary form for obtaining Social Security records. He further indicated that the trustees would consider Mr. Pesca's claim yet again when and if appropriate documentation was provided. No such documentation ever was forthcoming however.

*The Complaint*

Mr. Pesca brought this action to set aside the judgment in *Pesca I* in May 1997. The theme of the complaint—like his 1997 argument to the Fund—is that Mr. Pesca did not recall at the time of *Pesca I* that he had worked the requisite number of hours in 1982 for Fuller, that he first was reminded of this fact after *Pesca I* ended when he received annuity statements from the Fund showing a monthly breakdown of his hours for 1982, which allegedly refreshed his recollection. The complaint asserts that the alleged omission of Mr. Pesca's 1982 summer employment from the records previously disclosed to him was part of a scheme to credit to Frank Cannella the hours that Mr. Pesca worked.[3] It relies upon the annuity statements,[4] Mr. Pesca's alleged belief that time actually worked by him was credited to Frank Cannella,[5] and references to litigation in which former union officials and service providers were accused of unrelated unlawful acts.[6]

*The Present Motion*

The Fund has moved for summary judgment dismissing the complaint. It argues in substance that the evidence relied upon by Mr. Pesca—his allegedly refreshed recollection of the events of 1982—was not "newly discovered" within the meaning of Rule 60(b). It contended further that there was no fraud because the number of hours Mr. Pesca worked in 1982 was not in issue in *Pesca I* and, in any case, because the annuity statements that supposedly refreshed Mr. Pesca's recollection were disclosed to Mr. Pesca when he requested them, which he failed to do before the prior action was concluded.

Mr. Pesca has responded in a most remarkable fashion. He inveighs against summary judgment as an extreme remedy and protests that he did in fact work the requisite number of hours in 1982.[7] But the affidavit then states:

---

**3.** Cpt ¶ 21.

**4.** *Id.* ¶ 17.

**5.** *Id.* ¶ 21.

**6.** *Id.* ¶¶ 19–20.

**7.** Pesca Aff. ¶¶ 6–9.

"Several years ago, ..., I had learned that instead of my work in the summer months of 1982 having been credited to me, it appeared that the payroll maintained by the Fuller Co. for the months of June, July and August of 1982 listed some other individual's name and social security number. One of my objectives in the discovery aspect of this lawsuit would be to confirm my allegations concerning the actual name and social security number of the person who was credited with my work for total salary and pension benefits."[8]

Thus, while the affidavit later asserts that Mr. Pesca first obtained a breakdown, by employer, of the Fund's records of the 1982 hours worked,[9] Mr. Pesca's affidavit in opposition to the motion for summary judgment appears to concede that he learned "[s]everal years ago" that work he had done for Fuller in the summer of 1982 in fact had been credited to someone else. This of course necessarily means that Mr. Pesca knew that the Fund's records understated the hours he had worked in 1982.

### Discussion

■■■■ Rules 60(b)(2) and 60(b)(3) empower district courts to grant relief from final judgments on the basis of (1) newly discovered evidence that with due diligence could not have been discovered in time to move for a new trial under Rule 59(b), and (2) fraud, respectively, provided relief is sought no more than one year after the date of the judgment in question. Relief in such cases is "extraordinary" and available "only upon a showing of exceptional circumstances."[10] Here, however, the one year period has expired. While relief nevertheless is available in a proper case by means of an independent equitable action such as this, the standard that must be satisfied is, if anything, even more stringent than that applicable to a Rule

60(b) motion.[11] The undisputed facts before this Court demonstrate that Mr. Pesca has not satisfied the requisite standard.

### Newly Discovered Evidence

■■■■ In order to obtain relief under Rule 60(b)(2), a standard arguably more favorable to Mr. Pesca than that applicable to an independent action such as this, he must demonstrate that the facts upon which he now relies (i) existed at the time of the dispositive proceeding in *Pesca I*, (ii) justifiably were not known to him despite the exercise of due diligence, (iii) are admissible in evidence and of such import as probably to have changed the result in the prior action, and (iv) not merely cumulative and impeaching.[12] These requirements obviously are not satisfied here.

To begin with, Mr. Pesca's affidavit admits that he knew "[s]everal years ago" that at least some of his work in 1982 was credited to another worker instead of himself.[13] He therefore knew before the prior action was decided that his 1982 hours had been understated and either knew or knew of the possibility that the extent of the understatement was material—i.e., that a truthful accounting of his hours would have entitled him to a year of credited service for 1982. Certainly if Mr. Pesca actually knew during the litigation of *Pesca I* that he had worked at least 600 hours in 1982, there was no new evidence to discover—he would have known, but inexplicably failed to use, the evidence he now seeks to characterize as "newly discovered." And the result would be no different even if he knew only that there had been some understatement but not known of its full extent. Surely knowledge of an understatement was sufficient to require an inquiry by him. Yet Mr. Pesca did not suggest in *Pesca I* that any understatement had occurred,

**8.** *Id.* ¶ 10 (emphasis added).

**9.** *Id.* ¶ 16.

**10.** *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (quoted in *Martin v. Chemical Bank*, 940 F.Supp. 56, 58–59 (S.D.N.Y.1996)).

**11.** *See, e.g., Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 663 (2d Cir.1997);

*Geo. P. Reintjes Co. v. Riley Stoker Corp.*, 71 F.3d 44, 49 (1st Cir.1995): *Griffin v. FDIC*, 831 F.2d 799, 802 (8th Cir.1987); *Carr v. Dist. of Columbia*, 543 F.2d 917, 926 (D.C.Cir.1976).

**12.** *E.g., Frankel v. ICD Holdings S.A.*, 939 F.Supp. 1124, 1127 (S.D.N.Y.1996) (citing cases).

**13.** Pesca Aff. ¶ 10.

sought no discovery on the accuracy of the Fund's records and, as far as the record discloses, made no effort prior to the conclusion of the prior action to document the contention he now makes for the first time. Hence, if Mr. Pesca's affidavit means what it says, there is no basis for relief because he either knew the facts he now seeks to adduce or knew enough so that his failure to act is inconsistent with his having acted with due diligence.[14]

The foregoing is fully sufficient to dispose of the claim of newly discovered evidence and, as will appear, the fraud claim as well. Nonetheless, the Court will assume *arguendo* that the devastating admission in Mr. Pesca's affidavit in fact is inaccurate—that it is a product of careless lawyering and inattention by Mr. Pesca. Even on that supposition, however, Mr. Pesca would be entitled to no relief here.

First, Mr. Pesca's prior employment history is a subject manifestly within his own knowledge. In *Pesca I* the evidence before the Court showed that Mr. Pesca worked only 208.5 hours in 1982 [15] whereas he now claims that the correct figure was over 600. If he now "knows" that he worked over 600 hours in 1982, it is difficult to see how he did not know or have the means of knowing that he did so at the time *Pesca I* was decided.

The complaint suggests that Mr. Pesca justifiably failed to remember the extent of his 1982 employment at the time *Pesca I* was decided and that it was only the subsequent production of the annuity statements that prompted his memory. This contention, however, does not ultimately suffice. Even if one were to assume that failure of unaided memory would have been justifiable in the sense required by the rule, Mr. Pesca's failure to pursue the matter before he suffered an adverse result in *Pesca I* was not.

Rule 60(b)(2) requires one seeking relief on the basis of newly discovered evidence to demonstrate that the information at issue could not have been discovered with due diligence.[16] In this case, Mr. Pesca knew during the period November 1993 through February 1994, when he was discussing his eligibility for a disability award with the Fund, that the issue on which his pension eligibility turned was whether he had worked sufficient hours in 1982 to gain credited service for that year.[17] That was equally clear throughout the litigation of *Pesca I*. Yet there is no evidence or, for that matter, contention that Mr. Pesca made any effort, either before or during the litigation, to verify the Fund's contention that he worked only 208.5 hours in 1982. To the contrary, Mr. Pesca accepted the Fund's position throughout. He contended instead that the denial of benefits was arbitrary and capricious because he worked more than the minimum number of hours over the entire eight year period at issue although he acknowledged that he had not worked the required minimum number of hours in each of the eight years.[18]

Even assuming that Mr. Pesca's mind was blank throughout the period from the commencement of his effort to obtain benefits and the conclusion of *Pesca I*, no reasonable person in his position would have accepted blindly the Fund's position as to the number of hours worked without making the slightest effort at verification. As subsequent events demonstrate, even an action as simple as asking the Fund for a record of the hours worked for each employer in the year in question produced (i) a timely response, and (ii) according to the complaint, information which prompted Mr. Pesca's recollection. Nor was Mr. Pesca dependent solely on the Fund. He could have sought an earnings record from the Social Security Administration or consulted any retained copies of his tax returns, pay stubs, or other pertinent records. He has not even alleged that the information he eventually got from the Fund

---

14. Nor is there any basis for excusing Mr. Pesca's inaction on the theory that the Fund would not have revealed the information in question had Mr. Pesca asked for it. The record shows that the Fund provided Mr. Pesca with the breakdown when he asked for it.

15. *Pesca I*, 879 F.Supp. at 24.

16. *See, e.g., Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 54 (2d Cir.1993).

17. *Pesca I*, 879 F.Supp. at 24.

18. *Id.*

could not have been obtained, either from the Fund or from other sources, prior to the conclusion of *Pesca I.* This is fatal to his position.

*Fraud*

■ The fraud claim is subject to quite similar analysis.[19]

If, as Mr. Pesca's affidavit appears to admit, he knew during the litigation of *Pesca I* that he in fact worked more than 208.5 hours in 1982, it is difficult to see how the Fund can be blamed for Mr. Pesca's failure to bring that information to the attention of the Court. But even if he did not—even if he first recalled the pertinent facts in 1996 after the Fund fulfilled his request for the annuity statements—he would be entitled to no relief.

■ In order to sustain an application for relief under Rule 60(b)(3), a party must demonstrate fraud by clear and convincing evidence.[20] Where, as here, relief is sought in an independent action, the "type of fraud necessary ... is narrower in scope than that which is sufficient for relief by timely motion" and typically must rise to the level of "fraud on the court." [21]

■ Mr. Pesca has neither alleged nor adduced evidence of any facts amounting to fraud on the court. Even if, as he claims without substantiation, hours worked by him 15 years ago were fraudulently credited to the service record of Frank Cannella, there is absolutely nothing to suggest that the Court was defrauded in *Pesca I.*

To begin with, it is undisputed that the annuity statements which Mr. Pesca claims prompted his memory of the events of 1982 were turned over to him on request. There is no evidence that he sought the records prior to the disposition of *Pesca I* much less that they were refused or otherwise concealed from him. Nor can the Fund be blamed for failing to turn over the records despite the lack of any request for them. The annuity statements, after all, are entirely consistent with the earnings record the Fund did produce—both show a total of 208.5 hours in 1982. Even assuming the accuracy of the theory of the complaint, the Fund certainly had no way of knowing that production of the breakdown by employer would trigger a recollection on Mr. Pesca's part of thirteen year old events that would suggest to Mr. Pesca that the Fund's records were inaccurate.

Equally significant, *Pesca I* was decided on an entirely different basis. The issue there tendered was whether the Fund had acted arbitrarily and capriciously in denying Mr. Pesca's claim given the parties' common assumption regarding the number and temporal distribution of the credited hours of service. There was no suggestion whatever that Mr. Pesca in fact had worked more hours in 1982 than had been credited to him. In consequence, the Court was not called upon to rely on an assertion that even arguably was inaccurate.[22]

In the absence of a showing of fraud on the Court, Mr. Pesca would be entitled to relief, if at all, only by demonstrating that the Fund's actions deprived him of any "opportunity to have the ground now relied upon to set aside the judgment fully litigated in the original action." [23] This manifestly did not

---

19. The prayer for relief on the basis of fraud is dismissed on the additional ground that the complaint fails to allege circumstances constituting the alleged fraud with the requisite particularity. No facts are alleged which give rise to a strong inference that the Fund acted with fraudulent intent. *See, e.g., Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir.1996); *San Leandro Emer. Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812 (2d Cir.1996); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *Nat. Council of Young Israel v. Wolf*, 963 F.Supp. 276, 281 (S.D.N.Y.1997); *Spira v. Nick*, 876 F.Supp. 553, 557 (S.D.N.Y.1995).

20. *See Madonna v. United States*, 878 F.2d 62, 64–65 (2d Cir.1989); *Nederlandsche Handel-Maatschappij, N.V. v. Jay Emm, Inc.*, 301 F.2d 114, 115 (2d Cir.1962).

21. *Campaniello*, 117 F.3d at 663.

22. Had Mr. Pesca disputed the number of hours worked in 1982, and had the Fund concealed evidence suggesting that its records were incorrect and that Mr. Pesca's contention was well founded, we of course would have a quite different case.

23. *Gleason v. Jandrucko*, 860 F.2d 556, 560 (2d Cir.1988) (quoting *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 n. 2 (2d Cir.), *cert. denied*, 409 U.S. 883, 93 S.Ct. 173, 34 L.Ed.2d 139 (1972)).

occur. Nothing prevented Mr. Pesca from seeking to verify and, if necessary, contesting the Fund's records as to the number of hours credited to him for the pivotal year.

*Rule 56(f)*

Mr. Pesca's final argument is the contention that summary judgment should be denied because he has not had an adequate opportunity to conduct discovery. He argues that "discovery would allow Plaintiff to obtain supporting affidavits, in addition to his own from Pension Fund officials, Union co-workers and employers which would certainly corroborate the existence of a factual dispute." [24]

 Plaintiff's position rests on FED. R.CIV.P. 56(f), which provides as follows:

"Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

But Rule 56(f) is not a talisman, the mere invocation of which will ward off a motion for summary judgment by an adverse party. Rather, the party resisting a motion for summary judgment must make a substantial showing by affidavit that:

"must include the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." [25]

No such showing has been made here. Plaintiff has not informed the Court except in the most conclusory and uninformative terms what additional discovery he contemplates. He has not explained how the facts

sought are reasonably expected to create a material issue of fact on the questions dispositive of whether plaintiff is entitled to relief from the prior judgment—whether (i) plaintiff has discovered material new evidence since the end of *Pesca I* that could not have been discovered earlier had plaintiff been duly diligent, and (ii) the Court was misled in the prior action through any culpable action by the Fund. He has not explained what if any efforts he has made to obtain the evidence he now claims to seek or why those efforts were unsuccessful. Rule 56(f) therefore affords no basis for the denial of defendant's motion.

### *Conclusion*

For the foregoing reasons, defendant's motion for summary judgment dismissing the complaint is granted in all respects.

SO ORDERED.

---

**24.** Pl. Mem. 7.

**25.** *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir.1994); *accord. e.g., Hudson River Sloop Clearwater, Inc. v. Dept. of the Navy*, 891 F.2d 414, 422 (2d Cir.1989): *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir.1985); *Maida v. Life*

*Ins. Co. of North Am.*, 949 F.Supp. 1087, 1092 (S.D.N.Y.1997); *Frankel v. ICD Holdings S.A.*, 930 F.Supp. 54, 66 (S.D.N.Y.1996); *Liebowitz v. Elsevier Science Ltd.*, 927 F.Supp. 688, 713 (S.D.N.Y.1996); *Thomas v. Stone Container Corp.* 922 F.Supp. 950, 958 (S.D.N.Y.1996).