690

In re DONALD SHELDON
& CO., INC., Debtor.

FEDERAL INSURANCE COMPANY,
Plaintiff–Appellant,

v.

Donald T. SHELDON, et
ano., Defendants,

and

Don L. Horwitz, Trustee for the Liqui-
dation of Donald Sheldon & Co.,
Inc., Defendant–Appellee.

No. 97 CIV. 9384(LAK).
Bankruptcy No. 85–6538(AJG).
Adversary No. 94–8368.

United States District Court,
S.D. New York.

May 11, 1998.

John W. Schryber, Jay G. Strum, Kaye,
Scholer, Fierman, Hays & Handler, New
York City, for appellant.

Glen Feinberg, Nina Cangiano, Harold J.
Moskowitz, Wilson, Elser, Moskowitz, Edel-
man & Dicker, New York City, for appellee.

## ORDER

KAPLAN, District Judge.

Mary Schad and Donald Sheldon, both former directors of debtor Donald Sheldon & Co., Inc. ("DSCO"), were found liable to the debtor in the amount of $16 million in an adversary proceeding for breaches of their fiduciary duties. The debtor's trustee brought this action against defendant Federal Insurance Company ("Federal") to recover the liability of Sheldon and Schad pursuant to DSCO's directors and officers liability insurance policy on which they were insured persons. Federal and the trustee cross-moved for summary judgment. Bankruptcy Court Judge Conrad granted Federal's motion, denied the trustee's motion, and dismissed the trustee's claim. On appeal, this Court reversed, held that Federal was liable, and remanded for the entry of judgment in favor of the trustee. *In re Donald Sheldon & Co.*, 186 B.R. 364 (S.D.N.Y.1995).

On September 18, 1995, Bankruptcy Judge Gallet on remand entered an order providing for a judgment of liability in favor of the trustee in an amount to be determined later. On March 15, 1996, Federal moved to vacate Judge Gallet's order and to reopen discovery on its contention—previously rejected by this Court—that it was not liable because the loss at issue fell within the "personal profit or advantage" exclusion in the policy. On December 26, 1996, Bankruptcy Judge Gonzalez, in a thorough 19-page decision, denied Federal's motion. On November 12, 1997, following the resolution of various additional matters not pertinent here, the Bankruptcy Court entered judgment in favor of the trustee in the amount of $10,604,039, which consisted of the policy's $7.3 million remaining limit of liability combined with prejudgment interest. Federal now appeals from the final judgment, contending that Judge Gonzalez abused his discretion in denying its motion to vacate the September 18, 1995 order. It contends that the order should be opened because it was prevented from conducting discovery of Donald Sheldon by virtue of his disappearance during the pendency of the coverage litigation, a circumstance that it characterizes as having denied it a full and fair opportunity to litigate its "personal profit or advantage" defense and as warranting *vacatur* on the basis of misconduct by Sheldon or on the theory that Sheldon's reappearance and acknowledgment of the existence of some documents that Federal did not see previously constitutes newly discovered evidence.

Judge Gonzalez's memorandum opinion soundly rejects each of Federal's contentions, and relatively little more need be said. This Court writes merely to emphasize a number of points of particular note.

### Federal Was Not Handicapped in Defending the Coverage Action

Federal's contention that it somehow was handicapped in litigating the coverage action that resulted in this Court's previous opinion is utterly baseless. The record demonstrates quite convincingly that Federal (1) fought a vigorous and successful battle to prevent any discovery, and (2) made a quite deliberate decision to have the question of coverage decided solely on the record of the underlying action by the trustee against Sheldon and Schad.

This action was commenced in the district court in 1990 as a declaratory judgment action in which Federal sought a determination, *inter alia*, that the "personal profit or advantage" exclusion of its policy precluded its liability. Judgment was entered in the underlying action on March 1, 1993. The trustee filed its answer and counterclaims in this case on March 31, 1993. At about the same time, the trustee served a number of discovery requests, including a notice to take Sheldon's deposition in Miami, and moved to transfer this case to the Bankruptcy Court. Federal objected to the deposition of Sheldon and, indeed, to all discovery in the case. For a variety of reasons, none of the discovery or, at least, none relevant here went forward.

On April 1, 1994, Judge Leisure granted the trustee's motion and sent the case to the Bankruptcy Court where it has been treated as an adversary proceeding in the DSCO liquidation. Once the matter reached the Bankruptcy Court, Judge Conrad held a status conference on April 20, 1994. Federal's counsel then announced that it wished to move for summary judgment on the coverage

issues and objected to the trustee's efforts to conduct discovery. (D–73, at 4) Federal's position was that the issue of coverage was to be decided on the record of the underlying proceeding:

"MR. FEINBERG [Federal's counsel]: We see no need to take any of that discovery [sought by the trustee]. We see the issues in this case as very simple, there is no factual issue, there was an adjudication in this Court and there was an adjudication against Mr. Sheldon and the SEC."*The question is on those facts which are undisputed facts, do the insurance policies' exclusion for dishonesty and personal profit apply? If they do, we win, if they don't, we lose.*

"It doesn't seem to me that there is any need to take discovery to matters such as drafting history of the insurance policy."

"The policy is clear, we win, if it's ambiguous, they are going to say we lose anyway, so why do they need to take drafting history and other kinds of discovery." (D–73, at 4–5) (emphasis added)

Judge Conrad responded that his instincts told him that the case would be resolved "without further discovery." (*Id.* at 9)

Following the April 20, 1994 conference before Judge Conrad, the parties cross-moved for summary judgment on the coverage issues. Consistent with the position it took before Judge Conrad on April 20, Federal sought no discovery for the purpose of opposing the trustee's motion for summary judgment. It simply went forward and litigated the motions—and the subsequent appeal to this Court—on the basis that Federal was entitled to win if the facts in the underlying action came within the exclusions and Federal's acknowledgment that it would lose if they did not.

In these circumstances, Federal's current claims ring very hollow indeed.

█ To begin with, the foregoing demonstrates that the heart of Federal's position here—that it was blocked from conducting discovery of Sheldon—is doubly erroneous. Judge Conrad did not stop any discovery by Federal—Federal sought no discovery. In response to *Federal's* assertion that coverage

would be determined, *one way or the other,* solely on the basis of the record in the underlying action, he simply indicated his belief that the matter probably could be resolved on summary judgment without discovery.

Second, nothing prevented Federal from responding to the trustee's cross-motion for summary judgment not only by contending, as it did, that Federal was entitled to judgment on the basis of the trial record in the underlying action, but alternatively that Federal should be granted a continuance or discovery, under Fed.R.Civ.P. 56(f), to meet the cross-motion in the event the court rejected Federal's primary position. Federal's contention that such an argument would not have met with favor before Judge Conrad is not persuasive, not only because Judge Conrad's remarks on April 20, 1994 do not justify Federal's argument, but in any case because Federal, if it seriously believed that discovery would have been important with respect to the cross-motion, should have protected its record. Further, the decision not to seek relief under Rule 56(f) quite likely was a tactical judgment. Seeking such relief would have been inconsistent with Federal's position that no discovery was necessary to decide coverage and thus would have undermined its efforts to block discovery by the trustee.

█ Relief from a judgment is extraordinary and available only in "exceptional circumstances." *Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir.1986); *accord, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1142 (2d Cir.1994); *Andrulonis v. United States,* 26 F.3d 1224, 1235 (2d Cir.1994); *Mendell v. Gollust,* 909 F.2d 724, 731 (2d Cir.1990); *Martin v. Chemical Bank,* 940 F.Supp. 56, 58–59 (S.D.N.Y.1996), *aff'd,* 129 F.3d 114 (2d Cir.1997) (table); *Frankel v. ICD Holdings S.A.,* 939 F.Supp. 1124, 1127 (S.D.N.Y.1996); *Pesca v. Board of Trustees,* 176 F.R.D. 110, 113 (S.D.N.Y.1997). It cannot be used to overcome the consequences of tactical judgments. *Andrulonis,* 26 F.3d at 1235; *Nemaizer,* 793 F.2d at 61, 63; *Martin,* 940 F.Supp. at 59; *Frankel,* 939 F.Supp. at 1127. Nor may relief be obtained by one who does not act with due diligence. *Pesca,* 176

F.R.D. at 113; *Frankel,* 939 F.Supp. at 1127 (citing cases).

The foregoing demonstrates convincingly that Federal and its counsel made a deliberate decision to sink or swim on the record of the underlying proceeding. Even if that were not so clear, Federal certainly did not act with due diligence in seeking Sheldon's testimony—on the contrary, it resisted it—by failing to advance in a Rule 56(f) affidavit its contention that Sheldon's testimony was required in order to defend the trustee's cross-motion.

*There Is No Basis for Relief on the Newly Discovered Evidence Theory*

■ The assertion that Sheldon's testimony, whatever it might be, and the cartons of unspecified documents allegedly in his possession would not warrant relief in any case. In order to obtain relief on the basis of newly discovered evidence, the moving party must demonstrate not only that the evidence existed at the time of the prior action and that it justifiably was not available to the movant— the latter of which is not so here for the reasons already discussed—but also that the evidence would be admissible and of such import as probably to have changed the result in the prior action. *E.g., Frankel,* 939 F.Supp. at 1127 (citing cases). There simply has been no showing here that Sheldon has anything to say, or that the documents contain anything, that probably would have changed the result.

*Federal's Current Theory Is Newly Conceived and, At Least in Part, Contrary to the Law of the Case*

It is important also to recognize that Federal's application below represented an attempt to relitigate the coverage issue on an entirely new theory first conceived after Federal lost its prior appeal to this Court.

The theory of the underlying action against Sheldon and Schad was that they "knew or should have known" that the GSI Loan would result in a violation of the net capital rule, that DSCO had engaged in illegal hypothecation of customer securities, and that Sheldon and Schad breached their fiduciary duties because they had personal interests in the transaction by virtue of their ownership of Donald Sheldon Group ("Group") stock. *In re Donald Sheldon & Co.,* 186 B.R. at 367. Federal's position was that the loss was excluded by the "personal profit or advantage exclusion" clause because Sheldon and Schad obtained an advantage from the events at issue by "(1) remaining employed as corporate officers, (2) retaining the opportunity to expand DSCO, and (3) gaining the opportunity to increase the value of their Group stock in the long run." *Id.* at 368. In other words, its position was that the exclusion applied because Sheldon and Schad incidentally gained from the events that caused a loss to the company, not that the insured profited by causing a direct loss to the company as, for example, by embezzlement. *Id.* The Court ruled for the trustee, essentially on the ground that Federal's construction of the exclusion was not the only reasonable view of the meaning of the policy, a conclusion which required judgment for the insured. *Id.* at 368–69.

Federal now argues that Sheldon's testimony and documents would be important to litigation of this exclusion because there is reason to believe that they would produce evidence that Sheldon has assets, which in turn might lead to evidence or an inference that he profited more directly than Federal previously argued from the transactions that resulted in the loss to DSCO. (*See* Federal Br. 8–9)

As indicated above, Federal previously argued that the exclusion applied because Sheldon and Schad benefitted incidentally from the events that gave rise to the loss. No amount of proof that Sheldon and Schad so benefitted would avail Federal because the Court already has ruled that such a benefit would not trigger the exclusion.

■ To be sure, Federal presumably seeks to show also that Sheldon and Schad obtained some direct benefit which caused the loss—i.e., was necessary to establish the underlying claim. But this is a brand new argument, and there is no reason why Federal should be permitted to raise it on a Rule 60(b) motion. Indeed, Judge Gonzalez, in rejecting a second motion to vacate the September 18, 1995 order, a ruling from which

Federal does not appeal, squarely and correctly held that the failure of Federal's counsel to advance the argument earlier was not a sufficient basis for relief. (CD–11 at decision dated Oct. 8, 1998, at 11)

*Conclusion*

For all of these reasons, as well as most of those advanced by Judge Gonzalez,[1] the court below plainly did not abuse its discretion. Indeed, this Court would reach the same result were the matter before it *de novo.* The order appealed from is affirmed.

SO ORDERED.

---

1. This Court expresses no opinion as to whether Sheldon's disappearance was misconduct upon which Federal may rely, as the other bases for affirmance make this issue immaterial. Similarly, as this Court would have denied relief even if the application had been made to September 18, 1995 order in conformity with the mandate of this Court.