Allan QUESTROM, Plaintiff,

v.

FEDERATED DEPARTMENT STORES, INC., Defendant.

No. 98 CIV. 0659(LAK).

United States District Court, S.D. New York.

March 16, 2000.

John M. Newman, Jr., Mark Herrmann, Christopher P. Fisher, Jones, Day, Reavis & Pogue, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This Court previously granted motions by defendant to dismiss most of plaintiff's case and for summary judgment dismissing the balance.[1] Familiarity with those opinions is assumed here.

Plaintiff now moves for reconsideration of the order granting summary judgment against him and has filed two motions seeking leave of court to file two additional affidavits by his putative expert in opposition to the motion for summary judgment. The point of this paper bombardment is to persuade the Court that there is an issue of fact as to whether the investment banker that performed the valuation in question took defendant's net operating loss carryforwards ("NOL's") into account in performing its discounted cash flow ("DCF") analysis.

These motions all are utterly without merit and quite obviously have been filed in an effort to expand the record after the case was lost in the hope of persuading the Court of Appeals, on the basis of materials that plaintiff elected not to submit before the case was decided, that there was a genuine issue of material fact. If there is to be finality to litigation, this effort must be rejected.

### I

It is important at the outset to place the current *contretemps* in perspective. The only issue that survived defendant's motion to dismiss the complaint was Questrom's claim that "Morgan failed to perform any analysis of the going concern values of similar businesses as required by the Employment Agreement."[2] That allegation was false.[3] Confronted on Federated's motion

Richard L. Fenton, Sonnenschein Nath & Rosenthal, for Plaintiff.

1. *Questrom v. Federated Dept. Stores, Inc.,* 84 F.Supp.2d 483 (S.D.N.Y.2000) (*"Questrom II"*) (summary judgment); *id.* 41 F.Supp.2d 294 (S.D.N.Y.1999) (motion to dismiss) (*"Questrom I"*).

2. Cpt.¶ 17; *Questrom I,* 41 F.Supp.2d at 305.

3. The evidence suggests that Questrom and his counsel knew when the complaint was filed that this allegation was false. The record on the

subsequent motion for summary judgment shows that J.P. Morgan Securities, Inc. ("Morgan"), the firm that performed the valuation in question, rendered a report in 1995 that explicitly stated that Morgan had done a comparable companies analysis. A 1997 report by Questrom's expert that was attached to his complaint (Cpt.Ex. 6) indicates that the expert had Morgan's report before this case was filed. *See, e.g.,* Cpt. Ex. 6, at 9 (discussing reconciliation of DCF approaches used by Morgan and Questrom's expert).

for summary judgment with the fact that Morgan quite clearly had done a comparable companies as well as a DCF and other analyses, plaintiff came up with the entirely new argument that Morgan should not have done the DCF analysis at all and in any case bungled it by failing to take Federated's NOL's into consideration in doing it. (It is, parenthetically, interesting to note that Questrom's expert in his pre-complaint analysis performed a DCF analysis, relied heavily on it in coming to his conclusions as to value, and attributed no value to the NOL's.[4])

In granting Federated's motion for summary judgment, this Court first held that Morgan was not forbidden by the agreement to do a DCF in addition to a comparable companies analysis.[5] It then noted that the questions whether it was permitted to perform a DCF analysis and, if so, whether it had performed it properly were "academic" because the effect of the DCF, if it had any at all, was to give Questrom more than he would have received if Morgan had done only a comparable companies analysis.[6] Finally, the Court pointed out—assuming *arguendo* that a failure to consider the NOL's "perhaps" was the type of mistake that might justify vacating an appraisal award—that Questrom's position was incorrect because Morgan quite clearly had considered the NOL's in doing its DCF analysis as evidenced by the facts that (a) its project leader so testified, and (b) its work papers showed that the net cash flow figures it used in its DCF analysis were substantially identical to the figures in Federated's business plan, which Questrom conceded were the appropriate numbers.[7]

Given the foregoing, Questrom quite evidently is disregarding the heart of the decision against him. In making post-judgment factual submissions on the NOL issue, he has ignored entirely two far more pertinent matters: (1) the Court's holding that the DCF

analysis was immaterial as a matter of law, and (2) whether, even if the DCF analysis adversely affected Questrom, a failure properly to account for the NOL's would have been the sort of mistake that would justify setting aside Morgan's 1995 valuation. Questrom has not questioned the Court's holding that the DCF analysis was immaterial, and he has not addressed the second issue.

With the issue placed in proper perspective, the Court turns to the pending motions.

## II

We begin with the motion for reconsideration, which is governed by Local Civil Rule 6.3. This rule provides in relevant part as follows:

> "A notice of motion for reconsideration or reargument shall be served within ten (10) days after the docketing of the court's determination of the original motion. There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked. * * * No affidavits shall be filed by any party unless directed by the court."

■ Plaintiff quite plainly does not seek to bring to the Court's attention anything that was overlooked in deciding the motion for summary judgment. Rather, he seeks to reargue yet again a question that the Court held was immaterial but, in the alternative, resolved adversely to him. That is not a proper use of a motion for reconsideration.[8]

■ Further, Rule 6.3 forbids the filing of affidavits on motions for reconsideration "unless directed by the court." That rule is consistent with the principle that motions for reconsideration are intended to bring to the Court's attention matters that it overlooked, not to "examin[e] a decision and then plug[ ] the gaps of a lost motion with additional matters."[9] Indeed, as Chief Judge Mukasey

---

4.  Cpt. Ex. 6, at 2 (attributed no value to NOL's), 4 (use of DCF), 8 (DCF "best suited for valuing the equity of Federated").

5.  *Questrom II,* 84 F.Supp.2d at 487–89.

6.  *Id.* at 488–89.

7.  *Id.* at 488–90.

8.  *See, e.g., WorldCom, Inc. v. Voice Plus Int'l, Inc.,* No. 97 Civ. 8265(DLC), 2000 WL 274182, *1 (S.D.N.Y. Mar. 13, 2000); *Arias v. Mutual Cent. Alarm Serv., Inc.,* Nos. 96 Civ. 8447(LAK), 96 Civ. 8448(LAK), 1999 WL 133571, *3 (S.D.N.Y. Jan. 22, 1999).

9.  *Polsby v. St. Martin's Press, Inc.,* No. 97 Civ. 690(MBM), 2000 WL 98057, *1 (S.D.N.Y. Jan.18, 2000).

recently wrote, a party seeking reconsideration "is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." [10]

### III

Given that the motion for reconsideration is inappropriate in these circumstances, the appropriate vehicle for seeking relief would be a motion to reopen the record on the motion for summary judgment or, since final judgment has been entered against plaintiff, a motion for relief from the judgment pursuant to Rule 60(b). [11] Even if plaintiff made such motions, however, they would lack merit, and for much the same reason—plaintiff sat on his hands for far too long before seeking to add the new affidavits to the record.

■ As noted above, it was Questrom who first injected the NOL issue into the case. Although the matter was not raised by his complaint, he submitted an affidavit of Mr. Harris in opposition to Federated's summary judgment motion that argued that Morgan had failed to account for the NOL's in its DCF analysis. Federated's reply papers disputed that claim. Moreover, at oral argument on July 29, 1999, Federated's counsel made precisely the argument adopted by the Court in granting summary judgment—that the substantial identity of the net cash flow figures in Federated's business plan and in Morgan's DCF work papers demonstrated that Morgan had taken the NOL's into account. [12] In response, Questrom's counsel made none of the arguments advanced by Mr. Harris in the two supplemental affidavits now proffered. [13] The motion then was taken under submission for six months during

which the Court prepared its opinion. Despite the fact that Federated had made the argument that Questrom now seeks to dispute, he did not seek leave to offer additional affidavits or briefing until after the motion was decided against him. Nor was this failure attributable to reticence—Questrom filed unauthorized sur-reply papers on another point in opposition to the summary judgment motion.

■ "An application to reopen the record ordinarily will be denied unless the party seeking to expand the record failed to adduce the evidence sought to be added notwithstanding its own due diligence." [14] Here, the only justification Questrom has offered for the failure to submit the new Harris affidavits earlier is the assertion that they "are necessary to respond to matters which neither Questrom, nor his counsel, nor Harris could have foreseen at the time the summary judgment motion was briefed or argued." [15] But that simply is untrue. The precise argument Questrom now seeks to answer was made during oral argument, and Questrom elected to stand pat for six months thereafter while the Court invested the time and effort required to decide the motion. His failure to seek to supplement the record far earlier reflected his own lack of diligence. There is no basis for excusing it. Accordingly, if the motions for leave to file the new Harris affidavits were treated as motions to expand the record on the motion for summary judgment, they would be denied.

■ Questrom would fare no better if his motions were treated as motions for relief from the judgment pursuant to Rule 60(b). Relief from a final order or judgment is extraordinary and available only in "exceptional circumstances." [16] It is not available to overcome the consequences of tactical

10. *Id.* (internal quotation and citation omitted).

11. FED.R CIV.P. 60(b).

12. Tr., July 29, 1999, at 44–54.

13. *Id.* at 54–55.

14. *Ortho Diagnostic Systems, Inc. v. Abbott Laboratories*, 926 F.Supp. 371, 372 (S.D.N.Y.1996); *accord, e.g., John v. Sotheby's, Inc.*, 858 F.Supp. 1283, 1288–89 (S.D.N.Y.1994), *aff'd*, 52 F.3d 312 (2d Cir.1995).

15. Pl. Reply Mem. at 2.

16. *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986); *accord, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir.1994); *Andrulonis v. United States*, 26 F.3d 1224, 1235 (2d Cir.1994); *Mendell v. Gollust*, 909 F.2d 724, 731 (2d Cir.1990), *cert. denied*, 501 U.S. 115, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991); *Martin v. Chemical Bank*, 940 F.Supp. 56, 58–59 (S.D.N.Y. 1996), *aff'd*, 129 F.3d 114 (2d Cir.1997) (table); *Frankel v. ICD Holdings S.A.*, 939 F.Supp. 1124, 1127 (S.D.N.Y.1996); *In re Donald Sheldon & Co.*, 222 B.R. 690, 692 (S.D.N.Y.1998), *aff'd*, 182 F.3d 899 (2d Cir.1999) (table); *Pesca v. Board of Trustees*, 176 F.R.D. 110, 113 (S.D.N.Y.1997).

judgments.[17] It certainly "cannot be used to overcome counsel's tactical judgments about what evidence to offer."[18] Nor may relief be obtained by one who does not act with due diligence.[19]

■ Here, the only subdivisions of Rule 60(b) that even remotely relate to the facts are (1) and (2), which in relevant part allow relief from a judgment, respectively, for surprise and on the basis of newly discovered evidence. But there was no surprise here because Questrom knew for months that the argument ultimately accepted by the Court was pending before it but did nothing. Questrom's counsel simply made the judgment that the record on the motion was adequate to his purposes. He will not now be given a second bite at the apple. And surely the affidavits of Questrom's own expert are not newly discovered evidence in these circumstances.[20] In consequence, there is no basis for setting aside the judgment under Rule 60(b).

### IV

Even if all of the procedural difficulties with Questrom's position were disregarded— and the Court does not disregard them—his position still would be without merit.

It is important to place the alleged error upon which Questrom relies—the supposed failure to consider the NOL's in the DCF analysis—in context. As Morgan's report made clear, it valued Federated in a manner that employed three established valuation methods, DCF and comparable companies analyses and a review of trading prices for Federated stock. As the Court previously stated, it "then exercised its judgment, in light of all the information before it, in select-ing a point within the range established by the comparable companies analysis at which to fix the value."[21] There is not the slightest reason to suppose that the value Morgan chose was a mathematical function of the value ranges as opposed simply to Morgan's informed and inherently at least somewhat subjective judgment. There certainly is no way to say that Morgan's final opinion as to value would have been any different if the valuation range fixed by the DCF analysis had been higher or, for that matter, lower.

This is highly significant here. While an appraiser's award appears to be open to attack under Ohio law on the ground of mistake,[22] not all mistakes justify setting an award aside. As one Ohio court wrote in dealing with a contention that an arbitration award should be set aside for mistake:

> "In order for a court to set aside an award on the ground of manifest mistake, it must appear that there is a mistake of such a character that the arbitrator would have corrected it himself, had it been called to his attention; permitting such a manifest mistake to stand 'naturally works a fraud.' [citation omitted] Thus, a mere error in judgment, or an erroneous conclusion of fact, will not constitute manifest mistake. [citation omitted]." * * *

> "In order for plaintiff to demonstrate manifest mistake in this case, then, he would have to establish that the arbitrator committed an error so patent and grave as would have required him to change his award."[23]

Moreover, this appears to set a standard less deferential to such awards than applies in most jurisdictions, many of which require not only a material mistake, but a material mistake apparent on the face of the award.[24]

---

**17.** *Andrulonis,* 26 F.3d at 1235; *Nemaizer,* 793 F.2d at 61, 63; *Martin,* 940 F.Supp. at 59; *Frankel,* 939 F.Supp. at 1127; *In re Donald Sheldon & Co.,* 222 B.R. at 692.

**18.** *Frankel,* 939 F.Supp. at 1127.

**19.** *In re Donald Sheldon & Co.,* 222 B.R. at 692; *Pesca,* 176 F.R.D. at 113; *Frankel,* 939 F.Supp. at 1127 (citing cases).

**20.** *Frankel,* 939 F.Supp. at 1127.

**21.** *Questrom II,* 84 F.Supp.2d at 486–88.

**22.** *Questrom I,* 41 F.Supp.2d at 302–04.

**23.** *Warner v. CTL Engineering, Inc.,* 9 Ohio App.3d 52, 54–55, 458 N.E.2d 399, 402 (Ohio Ct.App. 10th Dist.1983). *Accord John Swasey & Co. v. Laycock,* 12 Ohio Dec. Reprint 170, 1855 WL 3907, *5 (Ohio Super.1855); *see also City of Cleveland v. Fraternal Order of Police, Lodge No. 8,* 76 Ohio App.3d 755, 758, 603 N.E.2d 351, 352 (Ohio Ct.App. 8th Dist.1991) (material mistake); *Bates v. Pennsylvania R.R. Co.,* 26 Ohio Law Abs. 114, 33 N.E.2d 678, 682 (Ohio Ct.App.2d Dist. 1937) (same).

**24.** *See, e.g.,* AM. JUR. 2D *Arbitration and Award* § 169 (1962).

Nor might Questrom successfully resist application of this standard on the ground that it has been established in arbitration rather than appraisal cases. The policies governing the finality of awards in both cases is the same: with the narrowest of exceptions, "when disputing parties agree to submit their controversy to binding [resolution by a third party], they agree to accept the result, even if it is legally or factually wrong."[25] And while there appear to be no Ohio appraisal cases on this point, the New York appraisal authorities, which govern in the absence of persuasive evidence that Ohio law differs,[26] are to the same effect. In *Penn Central Corp. v. Consolidated Rail Corp.*,[27] the Court of Appeals noted what long has been clear, viz. that "factual errors do not ordinarily affect the validity of an [appraisal] award."[28] In doing so, it implicitly invoked the line of New York authority demonstrating that "[t]he party who seeks to set aside an award upon the ground of mistake must show, from the award itself, that but for the mistake the award would have been different."[29] As the Appellate Division wrote long ago, in language singularly appropriate to this case, any other view would make "the award, instead of being the end of a litigation, ... simply a useless step in its progress."[30]

Here, the alleged failure to take proper account of the NOL's in the DCF analysis does not appear on the face of Morgan's report, which was the award in this case. Even if it did, and viewing the evidence in the light most questionable to plaintiff, Questrom has failed to demonstrate that the value that Morgan ultimately placed on Federated after considering all of the information before it—which included the comparable companies analysis, the DCF model, the trading prices of Federated stock, and the fact that Federated had a large NOL—would have

been any different. Accordingly, the Court will not prolong this memorandum by addressing Questrom's latest arguments as to why the evidence shows that the NOL's were not properly considered.

V

For the foregoing reasons, the motion for reconsideration and the motions for leave to file additional affidavits all are denied.

SO ORDERED.

---

25. *Belden v. Webb*, 122 Ohio App.3d 199 204, 701 N.E.2d 445, 448 (Ohio Ct.App. 10th Dist.1997).

26. *See Employers Ins. of Wausau v. Duplan Corp.*, 899 F.Supp. 1112, 1118 (S.D.N.Y.1995) (absent showing of conflict, law of forum state applies); *see also Olin Corp. v. Insurance Co. of North America*, 762 F.Supp. 548, 558 (S.D.N.Y.1991) (no choice of law question arises where no conflict is perceived), *aff'd*, 966 F.2d 718 (2d Cir. 1992).

27. 56 N.Y.2d 120, 451 N.Y.S.2d 62, 436 N.E.2d 512 (1982).

28. *Id.* at 130, 451 N.Y.S.2d at 68.

29. *Remington Paper Co. v. London Assur. Corp. of England*, 12 App.Div. 218, 43 N.Y.S. 431, 434 (4th Dept.1896) (citing cases).

