**Allen QUESTROM, Plaintiff–Appellant,**

v.

**FEDERATED DEPARTMENT STORES, INC., Defendant–Appellee.**

No. 00–7292.

United States Court of Appeals, Second Circuit.

Jan. 16, 2001.

Richard Lieb, Kronish Lieb Weiner & Hellman LLP, New York, NY; John Hartje, Solomon Genet, Of Counsel, for plaintiff-appellant.

John M. Newman, Jr., Jones, Day, Reavis & Pogue, Cleveland, OH; Mark Herrmann, Steven C. Bennett, Christopher Fisher, of Counsel, for defendant-appellee.

Present FEINBERG, SOTOMAYOR, Circuit Judges, and HAIGHT, District Judge.*

### SUMMARY ORDER

UPON DUE CONSIDERATION of this appeal from a judgment of the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge* ), it is hereby

ORDERED, ADJUDGED AND DECREED that the judgment of the district court is AFFIRMED.

Appeal from the orders of the district court (1) dismissing all but one of plaintiff's claims; (2) granting defendant's motion for summary judgment on the remaining claim; and (3) denying plaintiff's motion for reconsideration and request to file additional affidavits.

In 1990, plaintiff-appellant Allen Questrom was hired as CEO of Federated Department Stores, Inc. and Allied Stores Corporation ("Federated") to lead them out of bankruptcy. Questrom's Employment Agreement provided for, among other things, incentive compensation equal to a fixed percentage of the increase in the equity value of Federated–Allied between February 3, 1990 ("Base Value") and January 28, 1995 ("Final Value"). Both the Base Value and the Final Value were to be determined on the basis of "market values of similar businesses (on a going concern basis), taking into account net income, cash flow, capital structure, and such other factors as such firm deems relevant in establishing such values." For the Final Value, these factors could be ignored if the appraiser, under the guidelines in the Agreement, found that the public trading price of Federated–Allied stock accurately reflected the Final Value. The Agreement provided that the Base Value and Final Value would be "determined by an investment banking or other qualified firm selected by the Boards of Directors of Federated and Allied, provided that [Questrom] has no reasonable objection to such firm."

Federated selected J.P. Morgan Securities, Inc. ("Morgan") to make the initial appraisal, Questrom did not object, and Morgan appraised the Base Value at approximately $2.8 billion. Morgan's determination of the Base Value remains unchallenged.

To determine the Final Value, Federated again selected Morgan, and Questrom did not object. Morgan appraised the Final Value at approximately $4 billion after rejecting the option available under the Agreement to rely entirely on the public trading price of Federated–Allied. Based on the increase between the Base Value and the Final Value, Federated paid Questrom $16 million in incentive compensation. Questrom claims that the Final Value exceeded $6 billion entitling him to a total incentive compensation of $63 million.

Questrom filed this breach of contract claim as a diversity action in federal court claiming that he was due an additional $47 million in incentive compensation. The district court granted Federated's motion to dismiss all claims except Questrom's allegation that Morgan "failed to perform any analysis of the going concern market values of similar businesses as required by

---

* The Hon. Charles S. Haight, Jr., United States District Judge for the Southern District of New York, sitting by designation.

the [ ] Agreement." *Questrom v. Federated Dept. Stores, Inc.,* 41 F.Supp.2d 294, 305 (S.D.N.Y.1999) ("*Questrom I*") (internal quotation marks omitted). After allowing for some discovery, the district court granted Federated's motion for summary judgment as to the remaining claim, finding that Morgan had performed its valuation in accord with the requirements of the Agreement. *Questrom v. Federated Dept. Stores, Inc.,* 84 F.Supp.2d 483 (S.D.N.Y.2000) ("*Questrom II*"). The district court denied Questrom's motion for reconsideration and for leave to file additional affidavits. *Questrom v. Federated Dept. Stores, Inc.,* 192 F.R.D. 128 (S.D.N.Y.2000) ("*Questrom III*").

■ On appeal, Questrom claims that the district court erred in finding that, as a matter of law, "the parties' intention was that [Morgan's] valuation was to be conclusive on the parties … absent fraud, mistake or collusion." *Questrom I,* 41 F.Supp.2d at 304. The Agreement provides that the Final Value "shall be determined by an investment banking or other qualified firm" selected for the purpose of making the valuation. The Ohio Supreme Court has held that when the parties to a contract agree to abide by the decision of an arbiter, then "the decision of the arbiter … is binding upon the parties, unless it is shown by clear and convincing evidence that such decision was based upon fraud, dishonesty or collusion." *Fred R. Jones Co. v. Fath,* 101 Ohio St. 47, 126 N.E. 878, 878 (Ohio 1920) (per curiam); *see also Lakewood Mfg. Co. v. Home Ins. Co.,* 24 Ohio Misc. 244, 422 F.2d 796, 798 (6th Cir.1970) (interpreting Ohio law to find that "a court will … indulge in every

reasonable presumption to sustain [an appraisal] in the absence of fraud, mistake, or misfeasance"); *Csuhran v. Merrimack Mut. Fire Ins. Co.,* No. 93–L–143, 1994 WL 102248, at *1–2 (Ohio Ct.App.1994) (finding contractual language requiring that a "decision agreed to by any two [of three appraisers] will set the amount of loss" was binding on the parties absent "fraud, mistake or manifest injustice").[1]

Questrom misses the mark when he compares, supposedly to his advantage, this valuation provision with the provision in another article of the Agreement that, if there should be "any dispute between the parties" as to Questrom's physical or mental disability, the certificate of an impartial physician "as to the matter in dispute shall be final and binding on the parties." That provision presupposes the existence of a dispute. The valuation provision does not; it simply says that the Final Value "shall be determined" by the selected firm, namely Morgan. Accordingly, we affirm the district court's finding concerning the binding nature of Morgan's determination of the Final Value.

■ The district court also correctly rejected Questrom's claim that Morgan was improperly influenced by Federated in making its determination. Questrom offers two examples of improper influence. In one, Morgan received a copy of a memo from G. William Miller, Federated's Chairman, suggesting that Morgan's valuation be made on the basis of the public trading price of Federated–Allied stock. There was nothing in the Agreement to prevent Morgan from considering this suggestion, which Morgan ultimately rejected. The second fact, pressed for the first time on

---

1. In interpreting Ohio law, we believe that these authorities provide a surer guide than *DeGroot v. Farmers Mutual Hail Ins. Co. of Iowa,* 267 Ill.App.3d 723, 205 Ill.Dec. 584, 643 N.E.2d 875 (Ill.App.Ct.1995) (concluding

that despite contractual language requiring that appraisers and an umpire "determine" the amount of loss, that any such determination was not final), cited by Questrom.

appeal, of personal differences between Miller and Questrom, does nothing to alter our conclusion. Taken together, these facts do not suffice to prove that the integrity or impartiality of Morgan's valuation process was compromised or that Miller improperly influenced Morgan.

Questrom's claim that Federated breached the Agreement by failing to replace Morgan upon Questrom's request must also fail. The Agreement provided that the valuations "shall be determined by an investment banking or other qualified firm selected by the Boards of Directors of Federated and Allied, provided that [Questrom] has no reasonable objection to such firm." Questrom's objection to Morgan's participation was untimely, coming well after Morgan was selected and, therefore, after the time to object had passed. The Agreement gave Questrom the right to object only to the selection of a firm, not to the judgments the firm made in conformity with the requirements of the contract.

Questrom challenges the manner in which Morgan arrived at the Final Value, claiming that it was at odds with the method provided by the Agreement. The Agreement required that Morgan, in "making the determinations of Base Equity Value and Equity Value on the Valuation Date shall in each case base its determination on market values of similar businesses (on a going concern basis), taking into account net income, cash flow, capital structure, and such other factors as such firm deems relevant in establishing such values." Questrom claims that Morgan improperly relied upon publicly traded stock prices in its comparative companies analysis and failed to use the specific information required by the Agreement in determining the "market values of similar businesses." We agree with the district court that Morgan, in accord with the Agreement, relied on cash flow and capital structure, in addition to net income and other relevant factors, in performing the comparative companies analysis required by the Agreement, and that Morgan properly considered public trading prices in determining "market values." *Questrom II*, 84 F.Supp.2d at 491. Significantly, the Agreement required no more than that Morgan take these factors into account and did not impose a specific valuation technique that would assign each factor a determinate role. Morgan, therefore, conducted the companies comparison in conformity with the terms of the Agreement.

Questrom also challenges Morgan's use of Discounted Cash Flow ("DCF") analysis. The DCF analysis employed by Morgan used comparable companies as an important element, aided Morgan only in selecting a point within the range established by the comparable companies analysis, and ultimately worked to Questrom's benefit in setting the Final Value near the top of the permissible range. We note that although Questrom claims that DCF analysis was "not authorized by the Agreement," Plaintiff's brief at 47, Questrom's own expert, in explaining the various valuation methodologies it employed, stated that it too had "relied most heavily" upon a DCF analysis.

Questrom further argues that even if a DCF analysis were allowed, Morgan's DCF analysis failed to take into account the substantial tax benefits of Federated's $900 million of net operating tax losses. For the reasons discussed by the district court, however, the record demonstrates that Morgan's DCF analysis did take this fact into account. *Questrom II*, at 489–90.

We have considered all of the defendant's other arguments and find them to be without merit. Because we affirm the district court in all respects, we need not reach the issue of what relief Questrom

would have been entitled to if he had prevailed.[2]

Accordingly, the judgment of the district court is hereby AFFIRMED.

---

2. In affirming the district court in all respects, we leave undisturbed the court's finding that Questrom is entitled to recover reasonable attorney's fees as provided by the court's opinion. *See Questrom II,* 84 F.Supp.2d at 492.