Eric JENKINS, Petitioner,

v.

Christopher ARTUZ, Superintendent
Green Haven Correctional
Facility, Respondent.

No. 98–CV–277.

United States District Court,
E.D. New York.

July 9, 2002.

Fredenck H. Cohn, New York City, for Petitioner.

Donna Aldea, Assistant District Attorney, Queens County District Attorney's Office, Kew Gardens, NY, for Respondent.

## ORDER

GERSHON, District Judge.

Following the affirmance by the Court of Appeals for the Second Circuit of this court's judgment dated May 11, 2001 (and entered May 16, 2001) granting habeas corpus relief to petitioner Eric Jenkins, *Jenkins v. Artuz*, 294 F.3d 284 (2d Cir. 2002), the District Attorney of Queens County, on May 14, 2002, moved to vacate the judgment, pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, and for a stay pending determination of this motion.[1]

Petitioner challenged his 1993 conviction after a jury trial in New York State Supreme Court, Queens County, of murder in the second degree and criminal possession of a weapon in the second degree. The trial that led to the conviction was petitioner's second trial on the charges. At the first trial, the trial judge had declared a mistrial after finding that the prosecutor had never disclosed to the defense that the State had entered into a cooperation agreement with David Morgan, the State's key motive witness.

Following state appellate proceedings, petitioner sought habeas corpus relief in this court on a variety of grounds, includ-

---

1. Familiarity with the detailed factual record set forth in this court's decision and that of the Court of Appeals is assumed.

ing that Morgan had given false testimony regarding his cooperation agreement and that the prosecutor had engaged in misconduct by failing to correct it. I appointed counsel to represent petitioner on the claim of prosecutorial misconduct.

The record before me showed that, before selecting a jury for the second trial, ADA Therese Lendino had acknowledged on the record that Morgan had entered into a cooperation agreement. She stated, "There are two witnesses who will be testifying for the People who happen to be incarcerated. As to one of those witnesses, I do realize that some sort of promise was made to that witness and [defense counsel] is aware of that promise." The trial judge granted defense counsel's request to cross-examine Morgan about the cooperation agreement, although ADA Lendino indicated that she "expect[ed] it w[ould] come out on direct anyway." At the trial, however, Morgan never admitted that, in order to secure a lighter sentence, he had agreed to testify against the petitioner, and the prosecutor never corrected Morgan's testimony but in fact capitalized on the omission both on redirect examination and in summation.

The parties on the habeas corpus petition agreed that Morgan had entered into a cooperation agreement in which he was offered a reduced sentence in exchange for his testimony against Jenkins. Specifically, the State acknowledged that "[d]uring petitioner's first trial, an Assistant District Attorney made a deal with David Morgan and his attorney that Morgan would receive a reduced sentence of six months incarceration and five years probation on a pending case in return for his testimony against petitioner." Apr. 29, 1998 Mem. in Opp'n to Pet. at 22.

In my May 9, 2001 Opinion and Order, I directed that the petitioner be released from custody if not retried within 90 days.

Rejecting petitioner's other claims, I found that petitioner had been deprived of his right to due process of law because of prosecutorial misconduct in that the prosecutor failed to correct and, indeed, actively promoted the false impression that Morgan had no agreement with the State to testify in exchange for a more lenient sentence and, thus, that there was no reason for the jury to doubt his credibility. On June 27, 2001, I granted a stay of the judgment pending appeal.

On appeal, the Second Circuit noted that "In the course of direct examination, ADA Lendino asked Morgan no questions about his plea agreement with the State as she had suggested she would. During the defense counsel's cross-examination, however, Morgan falsely denied its existence." *Jenkins,* 294 F.3d at 284, 288. The Court went on to note that "On redirect examination, ADA Lendino did not seek to correct her witness's at-best-ambiguous testimony about the existence of a plea agreement. Instead, she reenforced the impression that no agreement existed" by eliciting that he had made no deals with *her. Id.* at 294 F.3d at 288–89. The Second Circuit concluded that "the prosecution's knowing use of Morgan's false testimony could reasonably have affected the trial's outcome." *Id.* 294 F.3d at 293. It noted the significance of ADA Lendino's summation "which placed the State's credibility behind Morgan's untruthful testimony." *Id.* The Circuit set forth in detail why it found the prosecutor's conduct to be misleading to the jury, both during the testimony of Morgan and in the summation, and noted that the agreement "implicates Morgan's credibility, a vital issue in a trial with only two substantive witnesses [with Morgan providing the only evidence of motive] and no physical evidence linking the petitioner to the crime." *Id.* at 294. It further found

that "the remaining testimony was weak or problematic." *Id.*

In her affidavit in support of the Rule 60(b)(6) motion, the trial prosecutor acknowledges that she knew from her review of the transcript of Jenkins' first trial that her predecessor "had entered into a cooperation agreement with David Morgan and his attorney" where "in exchange for David Morgan's testimony at that trial, [he] would receive favorable treatment in his pending cases." Lendino Aff. ¶ 12. Nonetheless, the District Attorney seeks to vacate the judgment because of alleged information which the District Attorney now claims shows that the cooperation agreement with Morgan had become "void" for "lack of consideration" prior to the second trial; he further claims that ADA Lendino learned these facts while preparing Morgan as a witness at the second trial and, therefore, that ADA Lendino's conduct was not improper.

Despite the fact that ADA Lendino's conduct was the subject of the habeas corpus petition and the fact that she now claims she was aware of the "true" facts at the time of the second trial, no effort was made to present those facts to this court prior to this motion. On the contrary, as noted above, the District Attorney acknowledged in his response to the habeas corpus petition the existence of a cooperation agreement with Morgan in which he would receive favorable treatment on his pending cases in exchange for his testimony against Jenkins. The District Attorney submitted no affidavits to the contrary, nor did he request an evidentiary hearing, although the District Attorney, who handles countless federal habeas corpus petitions every year, is surely aware that evidentiary hearings are available in federal habeas corpus proceedings. The claim that "It

was only after this Court granted the writ in May of 2001 that this case came to the attention of [the trial prosecutor]," Respondent's Reply at 5, if true, reflects on the District Attorney's office, but provides no basis for Rule 60(b)(6) relief.

Likewise, the claim of diligence after the time that "this case came to the attention of [the trial prosecutor]" is meritless. No request for Rule 60(b)(6) relief was made at that time, nor did the District Attorney request a stay of his appeal in the Court of Appeals so that he could request such relief. On the contrary, he deliberately waited until after the appeal was decided, "believ[ing] that ... [he] might be able to prevail on the appeal notwithstanding the incomplete record," Aldea Aff. in Support of Respondent's Motion for Relief from Judgment ¶ 5, before seeking to reopen the record.

The District Attorney notes that in footnote 2 of his brief to the Circuit, it is stated that Morgan's actual pleas "suggest that the cooperation agreement offered to Morgan in exchange for his testimony at defendant's first trial was no longer in effect when Morgan testified at defendant's re-trial," that "The People have ordered the plea minutes in an attempt to ascertain conclusively whether or not the cooperation agreement was still in effect at the time Morgan testified at defendant's re-trial," and "If, indeed, the minutes reflect that the cooperation agreement was null and void, then the People will file a motion with the District Court pursuant to Federal Rule of Civil Procedure 60(b) seeking relief from judgment." Aldea Aff. ¶ 5 & Ex. M. But this footnote and the claims in it were never brought to my attention until after the Second Circuit affirmance, nor, as I have said, did the District Attorney ever before ask me to reopen the record to correct his earlier admission regarding the cooperation

agreement. Nor did he ask the Circuit to stay the appeal to make an application to reopen.

And this footnote—indeed, the whole claim of a need to obtain records—is inconsistent with the trial prosecutor's claim that she knew at the time of the trial that Morgan's cooperation agreement was void. If her claim is true, then the allegation of a need for records to see *whether* the cooperation agreement was still in existence is a sham. And even if records would have been helpful to support her claimed knowledge, there is no reason they could not have been identified, even if not yet provided, in an application to vacate the judgment. Nor are there anything but conclusory allegations as to why it took over a year to obtain the documents.

Finally, the District Attorney continues to misapprehend the nature of a prosecutor's obligations. The "new" information, upon which the District Attorney contends the petition should be reopened, assuming *arguendo* it is accurate, certainly should have been brought out before the jury for its evaluation of the credibility of Morgan.[2] It was the jury's province to determine whether Morgan's testimony was affected by the agreement which the District Attorney still concedes Morgan had entered into with the prosecution prior to his testimony at the first trial. The District Attorney was not entitled to determine unilaterally to take the issue of the effect of the agreement on the witness from the jury by misleading the jury into thinking there had

never been an agreement with the prosecutor, especially after the declaration of a mistrial when the existence of that very agreement first came to light.

Rule 60(b)(6) relief is available only under extraordinary circumstances. *Ackermann v. United States,* 340 U.S. 193, 199, 71 S.Ct. 209, 95 L.Ed. 207 (1950); *Nemaizer v. Baker,* 793 F.2d 58, 63 (2d Cir.1986); see *Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) ("To justify relief under subsection [60(b) ](6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay."). "[F]ree, calculated, [and] deliberate choices are not to be relieved from" through Rule 60(b)(6), *Ackermann,* 340 U.S. at 198, 71 S.Ct. 209, and lack of due diligence counsels against granting relief. *Questrom v. Federated Department Stores, Inc.,* 192 F.R.D. 128, 132 (S.D.N.Y.2000), *aff'd,* 2 Fed.Appx. 81 (2d Cir.2001); see *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 863 n. 11, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988).

Following these fundamental principles, I deny the motion for Rule 60(b)(6) relief. In light of this disposition, I also deny the motion for a stay.

**SO ORDERED.**

---

**2.** The District Attorney's claim that the facts presented on this motion are uncontested by petitioner and his further suggestion that petitioner had an obligation to contest facts stated in footnote 2 of the District Attorney's brief to the Second Circuit, which facts were not in the record on appeal, is rejected. All of the facts upon which the District Attorney relies were within the knowledge of the prosecutor, if anyone, and not petitioner. Petitioner's opposition to this motion recognizes that a

determination of the truth of the District Attorney's new position as to the facts would require an evidentiary hearing. There has been no admission of the facts that the District Attorney now puts forth. Nor did petitioner have an obligation to contest factual statements *dehors* the record made by the District Attorney in a footnote in his brief to the Second Circuit. The effort to shift responsibility for his own conduct to the petitioner has no basis.